Gaston, Judge,
 

 after stating the case as above, proceeded as follows: The principal controversy in this case is, whether Maurice Smith ought to be charged, in account, with the estates confided to his management, with interest — and if so, from what time — upon what sums — and whether with simple or compound interest. These questions, are presented by the pleadings — and also arise upon the exceptions — and when they are determined, there will probably be but little difficulty in making a full settlement between the parties.
 
 *339
 
 Nothing can be clearer, in point of principle, than the eral rule, that a trustee shall not be allowed to retain to himself, profits made upon the use of the property of his
 
 cestvy que trust.
 
 These profits are, in the nature of fruit and increase, and belong, of right, to the owners of the property. It is seldom practicable, however, to ascertain, with precision, when trust funds have been misapplied, the exact gains therewith'made; and, therefore, it has been found necessary to adopt a general rule, which substitutes, as the measure of profits, what the law, or the usage of the country, regards as the ordinary fruit or produce of capital. Where the breach of trust is accompanied with corruption, and there is abundant reason to believe that the general rule is an inad- • equate measure of the wicked gains actually made, the Court may, and
 
 sometimes
 
 does, direct rests in taking the accounts, so as to render the trustee chargeable, in effect, with
 
 1
 
 ° ;
 
 1
 
 compound interest. The primary purpose is, to secure to the
 
 cestuy que trust
 
 the profits on the use of their money; and the second, to discourage and prevent the application °f trust funds to the private purposes of the trustee, a practice, ' which, while it endangers the safety of the property, tempts to further faithlessness, and to ultimate dishonesty and ruption. The propriety of these principles is so obvious, that they could not fail to receive the sanction of the Courts of this State. Indeed, there are peculiar reasons here, which have beed supposed to call for a more extended and rigorous application of the rule of accountability for interest, than , , , .... • .... that which prevails with respect to executors and administrators in the country of our ancestors.
 
 There,
 
 the legal, is above the ordinary market rate of interest;
 
 here,
 
 it is
 
 J i n
 
 what is deemed the common value of the use of money, While, therefore, it is usual, in England, to charge trustees, made liable for interest, on trust funds, but four per
 
 centum,
 
 although the statute rate of interest be five, here, when , ° , , , . , -, . , rest has been charged at all, it was never charged at less than six per
 
 centum,
 
 allowed by law on loans of money. With us, too, there has always been such a constant demand for money, so many temptations to adventure on schemes of profit, and such a habit of rapid investments, that the
 
 *340
 
 sumption against its remaining idle, even in the hands of or administrators, was deemed not an unreasonable one. Moreover, as the law here allowed compensation to trustees of this description, by commissions, there was not , , ,. ,. r . , . , same fear of discouraging persons from accepting these offices, by a severe accountability, as is natural where their services are to be performed gratuitously. Certainly, there ’ ^ has been the established usage to charge interest on balances in the hands of executors and administrators, whenever these have accumulated beyond the exigen-^ministration, unless it appears that the fund had
 
 been kept sacred
 
 and
 
 intact
 
 for the
 
 cestvy que trusts
 
 as
 
 their
 
 -property, ready to be delivered over to them, so that profits not have been made thereof.
 

 
 *339
 
 a trustee allowed to -fits made use oi the ¡¡S's°1^',tJ„/of
 
 we trusts.
 
 these pro fits are in ot^ti-uJ^and increase & belong of right to the UiTpropet-lióm practi" cable, howe ■'Vd* to ftS** certain with J“,|ds *>»ve plied, theP therewith0* [herefored ,:t lias been found necessaryio Ü'1¿jjj1 sub_ stitutes as the measure whát’the ¡,a"g°„r’j;e re-gardsasthe ordinary . breach of with corrup
 
 *340
 
 -tion, _ and soneto* be-rule’s an measuiUe rf tie"co'16! may, and ingtVe'ao-counts so the trusiee wiuiecom.e pound
 

 this case, the mass of the testator’s personal estate con-assisted 0f ten bonds, each for the sum of 110,000, payable in ten successive years, by Alexander Boyd and others, or Mecklenburg, in Virginia; all of which bonds, it appears, collected by suit, and some of them after much delay. Upon examining the accounts, taken by the Master, it appears, that after deducting a reasonable rate of commissions, for the services of the executor, there was no considerable balance of money in his hands, beyond what might be reasonably necessary to meet the charges of administration, and pay unsatisfied demands against the estate, until the year 1824; when, by reason of upwards of $23,000, then received from the Boyd debts, besides other considerable collections, there remained in his hands, at the end of that year, upwards of $20,000, which balance never grew less, but, on the contrary, went on increassing. Upon the balance, at the end of this year, the Court thinks that the executor ought to be charged with interest, unless he has exonerated himself therefrom, by reason of the special matters set up in his answer. A.s we understand that answer, it alleges that he was unable to settle with the legatees, because they were then under age, and without guardians; that he did not deem himself jus tided in lending out the money for them, or othewise investing it for their benefit; and that therefore he
 
 kept
 
 it, making no profit thereof. The language of the answer, in re-
 
 *341
 
 ’ gard to the keeping of the money, is, “that he hath, at all times, been
 
 in possession
 
 of all the money of his testator, that was collected and not disbursed,
 
 either
 
 by having the same at his own house—
 
 or
 
 about his
 
 person
 
 — or in some of the banks in North Carolina or Virginia.” This statement, is obviously so vague, that, with all its appearance of specification, it amounts to little else, than that he had the money
 
 someiohere,
 
 and affords to those interested, very slender opportunity of ascertaining
 
 where
 
 — and still less
 
 how.
 
 it was kept. An attempt was made to obtain specific information on this subject, by interrogatories, administered to the exec-cutor through the Master; but all thus acquired, amounted to no more than this: that the
 
 only banks
 
 in which
 
 he
 
 had made deposites were the State Bank of North Carolina, the Farmers’ Bank of Virginia, and the United States Branch Bank at Richmond; and that a statement of his
 
 entire
 
 ac • count, with each of those institutions, was contained in certain copies of the bank books exhibited ro the Master. These accounts from the bank books, are accounts current between Maurice Smith, (individually,) and the banks, and make no discrimination between the deposites, as having been made otherwise than to the general credit of the depositor. The executor has not undertaken to specify which, if any of them, were an account of the moneys of his testator. Úp-on the answer and the examination, it must be held, fore, that while the executor claims to be relieved from interest, because of his having kept the fund for his’besiM?/ ;
 
 1 •' 1 trusts-
 
 without having derived profit therefrom, he refuses to disclose where, or how, it was kept for them. It is impossible, we think, to account for the withholding of these sonable explanations, on the part of a trustee, from his 1 * .
 
 que
 
 trusts, in regard to the custody and management of their money, for many years, upon any principle consistent with the fact that it has been actually aud
 
 bona fide
 
 kept
 
 J j
 
 sively for their benefit. •
 

 with tor many years, a rea ¡jianntíonin manage -ment ol their mon-be’taUn'° m tactually &
 
 buna fide
 
 kept ii for t'^er bene-fat‘
 

 We must suppose, unless we attribute to the defendant, both in his answer and upon his examination, a deliberate purpose of equivocation, that some, at least, of the moneys appearing to his credit, upon these accounts. were those
 
 *342
 
 the estate of his testator. They are not
 
 all
 
 such, for the account exhibits, as he alleges,
 
 his
 
 entire dealings with the banks; some of which, therefore, must be understood to have keen his individual dealings. From these accounts, then, it is to be collected, that the trust .funds went into the mass of the executor’s property, and by no visible marks or signs were, in any respect, distinguished from his private moneys. They swelled the executor’s personal credit at bank — upon ¿!eath, they became assets in the hands of his personal representatives, and could not have been claimed as the as- , sets of the testator, by a representative oí that estate — they were liable to his creditors — were, in all respects, his proper-t„ charging himself with the amount thereof, in account with his
 
 cesluy que trusts.
 
 It is impossible, upon this state of facts, to hold that the executor
 
 did not use
 
 the funds of the estate. He has declared, indeed, that he did not “ use them for himself, or loan them on his own account, or spec- '
 
 A
 
 u]ate therewith to make profits lor himself;”' and we 'cannot declare his answer false, unless compelled to do so, by clear P1'00^- But it is manifest, if credit be given to the answer, that the defendant, in denying all personal use of the trust funds, made the denial in a different sense from that in which we should have understood it, but for the explanations other-
 
 »
 
 1 wise afforded,
 

 íor^ace”" the trust funds ol his individual bank along* wiih ids -not be said used those cause keT thereby increases Ins personal bank-upon the funds' became as-hands’nt'fiis personal representative, and cannot be claimed as vesmtnrf by* representa live or that estate--1‘hey are liable are, in all his proper-cLr.fecWe8' with ihe amount there -of, in ac-h?s’cea/7iyl’
 
 que ousts.
 

 This discovery may properly create doubts whether the denial that these funds had been loaned on his account, or employed in speculation, to make profits for himself, is to be taken in the sense which it would seem to import. And . . _ . . . t . these doubts increase, upon further examination into the de-of the bank accounts. That with the Farmers’ Bank of Virginia contains but one credit for a deposite of cash, on the 19th of April, 1830, of $1,000; and this was drawn out on two checks of $500 each, one in favor of Webb, on the 27th 0f the ensuing month, and the other in favour of himself, on ^ ' . the 25th of February, 1831. If this deposite were of the mo-néy of the estate, (and if it were not,
 
 this
 
 account could ^ave been presented but for the purpose of deception,) why is the money thus withdrawn from its place of security — and withdrawn in two sums, at distinct times? It must have
 
 *343
 
 been for some purpose connected either with the necessities of the estate, or with the private concerns of the depositor» We have examined the account as returned by the executor-as made out by the commissioner — and no application of eh ther of those sums at, or about either oí the times, to the purposes of the estate, appears. The account with the United States Branch Bank, at Richmond, contains three deposites^ two of $1,000 each, made on- the same day, the 24th of April, 1829, the whole amount whereof, $2,000, was withdrawn by “ draft,” on the 24th April, 1830; and one of $1,000, made on the 25th February, 1831, of which $500 was checked for on the 29th of August, 1833; and the remaining $500 yet remains standing to the credit of the depositor. If any of the money, thus deposited, were funds of the estate, the same inference arises, from the manner in which they were withdrawn, of their actual application to the private necessities or business of the executor. The account with the State Bank of North Carolina furnishes, as far as can be understood, evidence not more favourable to the positions taken here in behalf of the executor. It exhibits a deposite of $4,000, made by him, in May, 1822, and withdrawn in the succeeding year, by checks in favour of Willis Lewis, A. Paschall and T¡ Booth; and it is shewn that, with regard to two of these, Lewis and Booth, they got those sums on a personal loan from the executor. On the 6th and 7th of October, 1824, he made deposites of $4,000 and of $2,200. Upon these he checked in' favour of himself, on the 4th of October, 1825, for $2,000 — > and of R. Dickins
 
 & Go.',
 
 for $1,000. It is impossible to infer, from the accounts of the estate, that either of the sums thus checked for, was applied to the uses of the estate — and in May, 1826, he checked for the balance of $3,200, in fa-vour of Doctor Hunt and David Mitchell, to whom he lent the money as his own. If these, or any' of these, deposites were of the trust funds; then the trust funds were, to
 
 every
 
 intent, employed in his private business. One other deposite alone remains, of $3,000, which was made on the 14th of May, 1832, and drawn out on the 31st of August, 1833, by a check in favour of himself; and, probably, for the purpose of being paid in, at the then approaching September term, on ac-
 
 *344
 
 of the parties in this suit. Now, if this last deposite be oréiy one over made of trust funds in the banks, then these conclusions are forced upon us: First, there has been a most disingenuous mystification, in respect to the place of custody of these funds, by representing that they were kept either, at home, or about his person, or in some of the Banks of North Carolina or Virginia. An equivocation of this kind ought to deprive the answer of all moral weight. We are not casuists enough to decide whether such an equivocation has
 
 all
 
 the guilt of falsehood; but it is decisive to shew, that he who uses it cannot be relied on as a guide to truth. Another conclusion, resulting from this view, is, that the executor deemed it prudent to deposite his own.moneys, for safekeeping, in those public institutions, established for that pur-, pose — but kept the funds of others, committed to his care5 where, no one knows, and where, he will not disclose, when called on to account for them. And, when it is remembered that he had been, before this charge was confided to him, actively employed in making loans, buying up notes and other profitable money operations — and that these were continued with undiminished activity during the entire period when these trust funds were in his hands — there is no rational ground left for doubt; and we are bound to declare that they were used
 
 indirectly.,
 
 at least, for his personal emolument. But, on the other hand, if this last deposite in the State Bank was not the only one made of the funds of the estate — we shall be obliged, by these proofs, to pronounce, what certainly the parol evidence
 
 tends
 
 to shew, that the funds were used, in his private business,
 
 directly
 
 for the sake of profit therefrom. It is not necessary to decide between these two declarations. Charity should induce us to hope that the deceased may have thought, that while he kept on hand, at his command, an amount of money equal to what he supposed might be found due from him, on a settlement, he could say that he had not used
 
 the funds of the estate
 
 for profit. If it were so, it is a melancholy instance of the facility with which the love of gain leads an erring man into the strangest delusions. We pursue this unpleasant inquiry no farther; but direct that interest be charged from the close of the year
 
 *345
 
 1824, on the balance then due from the executor to the tate of his testator; and that, thenceforth, it be regularly charged and credited on the subsequent items in the account.
 

 . An execu-'«'hois wUh8Tnt«-®sta^
 
 be
 
 charged
 
 ^
 
 oí"tls receipts, whether they be' of Kterelt?r
 

 The estate of William Smith, the younger, consists, almost exclusively, oí
 
 his
 
 share in the estate oí Wm. Smith, the elder. It owed no debts — and interest is to be charged thereon from the date of the receipts.
 

 o0n the part of the plaintiffs, it has been insisted, that there should be annual rests made in the account, so as to charge 3 o the executor, in effect, with compound interest. It will seen that, to some extent, the persons interested will, without giving the direction for rests, get the benefit of compound terest; because, the interest with which the Court directs the executor to be charged, will be calculated
 
 on his receipts,
 
 whether they be of principal or interest, for his
 
 cestuy que trusts.
 

 The claim thus advanced by the plaintiffs, is rested on several grounds. In the first place, it is insisted, that according to the declarations of Maurice Smith, that his dying brother had charged him with the special care of the deceas-eds’ children, the said Maurice became their guardian, and ought to be held accountable as such. This ground cannot be maintained. The power of a father to appoint a guardian to his children can be exercised only in the mode prescribed by law — and that is express “ that it shall be by deed, executed in his life-time, or by his last will and testament, in writing.” Act 1762, Rév. ch. 69, sec. 2, (1 Rev. Stat. ch. 54, sec. 1.) It is then insisted that,-in and by the clause where the testator disposes of the residue of his estate among his wife and children, other than Mrs. Nuttall, he constitutes his executors guardians to these children, by imposing upon them the duties of guardians. The Court admits that when it can be clearly collected from the will of a father, that certain persons are thereby appointed to have the custody of the persons, and of the estates of his children, until they arrive at age, such an appointment will be held to constitute them guardians, as though the appropriate term had been used. But, where a term so well known, and of such universal use to describe the office, is not employed by the testator, there
 
 *346
 
 ought to be unequivocal indications of a purpose to confer the office, before the Court will declare it conferred. In the . . . clause in question there are no indications warranting such. a conclusion. Certainty, the clause itself is not very perspicuous; but, according to our construction, it directs that the use of his property shall be with his wife, for the support of her and the children, subject to the supervision of his executors, until a division of it can be conveniently made — either in kind or in the form into which the executors may convert it — between the wife and the children. This division necessarily means an equal division — and this division, between the wife and
 
 these
 
 children, is to be repeated, from time to time, until,
 
 their
 
 shares respectively shall be made equal to the special provision made for Mary Nuttall — after which, should there be a residue, the division — equal, of course — is to proceed between the wife and
 
 all
 
 of the testator’s children. If the supervision, which the testator directs to be exercised by his executors, constituted them guardians, they were appointed such, not only to his children, but his wife.
 

 in winch made be-ilm use of his children the appoint-, i*uardian for ce children to cause such sign o° lb¡ i'hrfraviu' lent purpose ing íiísjdíe iejn-Sied
 
 *347
 
 to an ac-ihemanage-the thereof in heid'b/tiie to the mens-“óuntaliiity permit,
 

 
 *346
 
 But, it is further contended that he ought to be thus charged, because he caused the guardian of his infant
 
 cestuy que trusts
 
 to be removed; and thereby getting the unlimited con-troul not only over the property of his testator, but over the persons of the testator’s children, he exercised the powers of and must be held to the responsibilities of a guardian. If the case were established that, after the appointment of Thomas Hunt, as guardian, the executor, for tbe fraudulent purpose ofpreventing his beingcal led to an account for the management of the estate, and of keeping the moneys thereof in his own hands, caused the said guardian to be removed, or to resign his office, we might feel ourelves justi-ge¿¡ ju exacting from him the most rigorous measure of ac- ° which the law will permit. But this case, we are decidedly of opinion, has not been made out: nor any thing shewn in relation to that transaction, for which the executor merits censure. It appears from the records, that at February Court, 1819, John R. Eaton, who had been nom-mated by the testator as an executor, but declined the appointment, the -maternal uncle of the children was appointed their
 
 *347
 
 guardian; and so far from its appearing that this was done in opposition to the wishes of Maurice Smith, he declares in his answer, and if the declaration were untrue, it might have been contradicted, that
 
 he
 
 refused to qualify as executor, until Mr. Eaton promised to take the guardianship. this allegation derives some support from the fact that Smith’s qualification as executor, did not take place until the November Term, 1818, although the will was proved at the ding August Term. It also appears that in November, 1819, Alexander Smith, the brother ofthe testator, became guardian to Charles, one of the plaintiffs, and remained guardian til February, 1824. Besides, it does appear that although Thomas Hunt, when he received the appointment, was in good credit, and generally deemed solvent, a very short justified the apprehensions of Maurice Smith, in regard to his embarrassments, and proved that, 6n this subject,
 
 he
 
 had that more minute information, and keen sighted sagacity, which are ordinarily found in pursuing habitually the business of lending money and buying in notes, besides, when Thomas Hunt resigned the guardianship, there was no money of the testator in hand — and no -immediate temptation to make Maurice Smith desire that the children should be without guardians. And, upon the proofs, it does not appear, that after the resignation of Thomas Hunt, he executed any of the duties of the guardian, except -those necessarily devolved on an executor -for infant
 
 cestuy que trusts,
 
 of furnishing the means for their support and education. It is lastly contended, upon this point, that these rests ought to be directed, because, by the will, the executor was expressly charged, with the duty of putting out the balances in his hands, from time to time, at interest, for the puposes of accumulation; and that his gross breach of duty, in utterly disregarding this injunction, deserves such severe visitation. "We are saved the necessity of ascertaining what ought to be the rule of interest in the case supposed-^-in the performance of which duty, there would be a difficulty in reconciling decisions that apparently clash with each other — because we do not find any such injunction in this will. The only power given to the executors, is-that of converting the property
 
 *348
 
 for the purpose of a division, and the testator seems to have contemplated such a division, whenever the administration oí his estate could be conveniently closed. '
 

 If the maser allow í-executor's111 trator™11ac-count, with-erstherefor, suíie the ev-ídence up-the allow-ntico is made, the i-upon an éx-kuntothem" he again re-ferredtoihe master, that
 
 vfsethem%
 
 groumís l'o* ins allow-tiie^onitR dde upon ness°nf Ehis judgment.
 

 ^aTC ^us deposed of the main subject of dispute in this cause, and of the matters embraced within the 1st and 2nd of the exceptions taken by the plaintiffs, and within the 5th, 7th and 8th of the exceptions of the defendant. The report must necessarily be re-committed, in order that the accounts may be made out in conformity with-the principles thus declared.
 

 The 3rd exception of the plaintiffs is, for that the Master credited the said Maurice with sundry small items for expenses, amounting together, to the large sum of $1,110:89 ceuts, without vouchers therefor, and without proof that the expensed so alleged were actually incurred, or, if incurred, for the benefit of the estate of his testator. According to the practice which has heretofore prevailed in this Court, and which must continue until one more suited to the con-venience 0f suitors can be established, this exception must s0 far be allowed as to direct the Master to revise this item; * and in his report thereupon to set forth the grounds of his allowance, so that the Court may he enabled to decide, if made subject of an exception, upon the correctness of his judgment,
 

 The 4th of the plaintiff’s exceptions, ana the 6th ana 10th of the defendant’s exceptions, relate to the
 
 quantum
 
 of commississions allowed to the executor; to the subject matter of commissions, and the mode of its computation. It is so difficult for this Court to ascertain, by any means in its w^at reasonable rate of commissions called for in any case, by the nature of the services, labour, and responsibility of the trustee, that it is much disposed, in gen-erai; t0 rejy) jn this respect, on the judgment of the Master. In this case, however, the Court perceives a safer guide for the exercise of its discretion, and will follow that guide. It appears that, on one occasion, when the accounts of the executor were audited in the County Court of Warren, and when the auditors recommended that there should be allowed to the executor a commission of 5
 
 per centum
 
 on his re
 
 *349
 
 ceipts, and 5
 
 per centum
 
 on his disbursements, the Court, nevertheless, ordered that his commission should be limited' to 4
 
 per cent,
 
 on each. The Court, therefore, overrules the allowance of 5 per cent, as made by the Master, and sanctions the rate established by the County Court. It is made a question by the 10th of defendant’s exceptions, whether the mouey paid to the widow of the testator as, and in lieu of, the distributive share to which she became entitled, by reason of her dissent from the will, is a
 
 disbursement,
 
 on the payment whereof, the executor can claim a commission. The Court holds, very clearly, that it is not. Here the payment was not made on an adjudication — but as on a purchase of the widow’s right. But if it had been made on an adjudica-. , -
 
 ... . , • ■,
 
 tion, or in any other form; still the claim was in the nature of a distributive share, and comes within the reason of decisions which forbid commissions on the payment of . ...
 
 1 J
 
 ° acies and distributive shares.
 
 Potter
 
 v. Stone,
 
 2
 
 Hawks 30.
 
 Clarke
 
 v. Blount, 2 Dev’xs Eq. Rep’ts 51. The Court is also called upon, by the other of defendant’s exceptions above stated, to correct an alleged error of the Master in the of computing the commissions. As the account itself is be taken on a new priciple, with respect to the calculation of interest, the object of this exception will be best attained directing the Master, after ascertaining the amount of the ceipts, as swollen, by the addition of the interest thereon, and of the amount of the disbursements, as so increased, make the allowance of commissions on the aggregate.
 

 An executor ¡senu-interest accrued on his receipts hn?sements, same, látéd o'i°ihe theimer thereon.
 

 one tenant ln C0,n!I1p" with»” expends in relation to Suae,mmon.
 

 The 5th and 6th exceptions of the plaintiffs are either disproved or unsupported by proof; and the small matter embraced in the 7th exception, is left, by the exceptants, so.completely in doubt, that those exceptions are over-ruled.
 

 The 8th, the 11th, 14th, 15th and 16th exceptions of the plaintiffs were abandoned, in the argument, as untenable.
 

 The 9th exception must be over-ruled. The Court discover no reason why a tenant in common of land has a right to charge his co-tenant with a just proportion ses incurred in relation to the common estate; and, upon the proofs, sees no room to doubt that the pa3nnents made to James W. Smith therefor, were, in all respects, proper.
 

 
 *350
 
 The 10th exception- must also be overruled. Upon the an- and the testimony of James W. Smith, which furnish evidence in relation thereto, it appears that the sum, for not collecting which, it is sought to charge the executor of William Smith, was not, in fact, due to the said William.
 

 The 12th and 13th of the exceptions of the plaintiffs will be considered together. Maurice Smith, who was the administrator of William Smith, the younger, purchased, at a certain sum, and while a suit was pending therefor, the interest of his intestate’s mother in and to a distributive share of the estate; and, it is alleged, by the other next of kin, that he paid too little therefor, and that the profit made on the purchase should result to them; and-, if not, then, that the estate is not.chargeable with any part of the costs which had been incurred in the litigation. Courts view with jealousy such contracts made by a trustee with his
 
 cestuy que trust.
 
 Whether the purchase, in this case, ought to stand or not, is exclusively a matter between the parties to that contract. As to all others, it must be understood as transferring the right which it professes to sell; and the price paid bv the purchaser is a matter which concerns none but the parties. The purchase is not shewn to have been made for the other next of kin; and the allegation that it was so made, has been peremptorily denied. The representatives of Mrs. Pugh are not before the Court. We see no ground on which to overrule the judgment of the Master, on the main matter of these exceptions. But it is equally clear that it was an error to allow the executor for the costs paid by him, in resisting
 
 this
 
 claim of Mrs. Pugh. To the extent of these, the account must be corrected.
 

 The matters disclosed in the affidavit of Samuel W. Smith, connected with the fact that the payment in question does not appear to have been claimed by M. Smith, in the account rendered by himself, render it so questionable whether an error was not committed by the Master, in charging the said Samuel with the sum of $1,500, as paid on the 25th of December, 1827, that the Court sustains the 17th and last exceptions of the plaintiffs, so as to direct the Master to revise his report in relation thereto.
 

 The Court also sustains the 1st exception, on the part of
 
 *351
 
 the defendant, so far as to require of the Master to review his report in relation to the payments claimed by said exception to have been paid to Charles Smith. The conveyance of the shares of the said Charles, in the estates of his father and' brother, is regarded by the Court but as a security for the sums actually paid to him; and the Master will ascertain fully all that has been received by him on the account thereof.
 

 against ¡J® court °* act upon ^“ount
 
 o°L S'maUy.
 
 They must fie referred to the Master,
 

 The Court is,of opinion that the 2nd exception of the defendant is irrelevant. The representatives of Mrs. Pugh are not before the Court; and the Court does not understand that the report finds the late Maurice Smith liable to any person, because of her share in the estate of William Smith, the younger. The value thereof is set forth, partly for the purposes of elucidation, and partly that the Court might be enabled to decree in relation thereto, if it held that the profits on the purchase of that share accrued to the other next of kin of the said William. But the report does not
 
 charge
 
 the said Maurice, in account with any of the parties to this suit, therewith.
 

 The matter of the 4th exception, the claim of the late Maurice Smith, on account of his share in the debt, has not been passed on by the Master, and it is against the usage of this Court to act upon matters of account
 
 ginally.
 
 The subject matter of this exception is, therefore, re-committed to the Master.
 

 The 9th exception of the defendant is overruled. It *• pears, that on the 9th of June, 1830, Maurice Smith made a large payment to Samuel Smith, in cash, and, at the time, bound himself by bond to make a further payment of $2,000; that this bond was not taken up until some time af-terwards, when it amounted, with interest, to the sum of $2,165. The Master having credited the whole account of M. Smith with cash, and the principal of the bond as a payment of the 9th of June, 1830, it is clear that the defendant is not entitled to credit for the interest which Maurice Smith paid for the use of the $2,000.
 

 The matter contained in the 11th of defendant’s exceptions is not properly brought before the Court, by way of exception. If material, the proper time to urge it will be, when a
 
 *352
 
 decree is prayed for by the plaintiffs. In the mean time, as the matter will be necessarily before the Master, upon the re-commitment of his report, any of the parties, who deem the enquiry suggested a proper and necessary one, may direct the attentjon 0f t|-le ]\iaster thereto — and have a more specific report concerning the matter thereof.
 

 . a o"thc Vents whloha -ow ¡a enti-tied to dower, in equi-]ferCorSher t¡ve *senta"
 

 Our attention was called, during the argument, to the sum of $483:74 cents, mentioned in the order of September term, 1833, to have been retained out of the moneys paid into office, subject to the further order of the Court. Thecounsel the legatees has prayed of us that this money may be decreed to be paid unto them. This prayer is not granted. The , r . r
 
 J °
 
 . money is stated to be the one third of the rents, which had been received by Maurice Smith, of Tennessee lands, where-unto w^e 0 ^ate Smith was entitled to dower — and if so, as an accessory, it ought, in equity, to follow its principal. The money, upon this representation, belongs to the representatives of Mrs. Pugh, and they are not before us.
 

 The decretal 'order will be drawn in conformity to the principles laid down, and the matters declared, in this opinion.
 

 Pbr Curiam. Order accordingly.