BATTERY PARK BANK *et al.* v. WESTERN CAROLINA BANK *et al.*

, (Decided May 15, 1900.) ,

*Receivers—Commissions, Erroneous, or Excessive, or Inade-*
*quate—Allowance Appealable—May be Paid at Inter-*
*vals—Rate in Excess of 5 Per Cent—Unnecessary Num-*
*ber of Receivers Disapproved.*

1. An order allowing commissions is a final judgment in respect to the matter decided, and is properly appealable.

2. Caution to the Judges not to appoint more receivers than are necessary, and to avoid making excessive allowances.

3. Allowances to receivers as well as to administrators and executors are reviewable when made on a wrong principle, or when clearly inadequate or excessive.

4. A rate not exceeding 5 per cent on receipts and disbursements seems to be the statutory limit for both receivers and personal representatives. The Code, secs. 379 (4), and 1524.

CIVIL ACTION in nature of creditor's bill, heard upon exceptions by defendants to partial report of referees in relation to commissions and allowances, by *Bowman, J.,* at Chambers in ASHEVILLE, December 31, 1898, in suit pending in BUNCOMBE Superior Court.

His Honor overruled the exceptions, and defendants appealed.

The exceptions are stated and discussed in the opinion.

*Messrs. Davidson & Jones, Merrimon & Merrimon,* and *Bourne & Parker,* for appellant.
*Mr. T. H. Cobb,* for appellee.

MONTGOMERY, J.   A report (not final) was returned on the 27th of August, 1898, by George H. Smathers, receiver

of defendant bank, to the Superior Court of Buncombe County, and the same was confirmed by his Honor Judge Bowman.    Numerous exceptions were filed by the plaintiffs, who are creditors of defendant bank, to the commissions and charges allowed to the receiver, Smathers, and to his former co-receiver, L. P. McLoud.    The exceptions were overruled, and the plaintiffs appealed.

Our first impression in respect to the appeal was that it was fragmentary, and therefore premature, regarding, as we did, the order of Judge Bowman allowing the commissions and charges as interlocutory.    But upon further consideration and examination, we have concluded that the order was a final judgment in respect to the matter decided, and that the appeal is properly before us.

The action was originally begun in the name of the Battery Park Bank, in its own behalf and all other creditors, against the Western Carolina Bank.    The insolvency of the defendant was alleged and temporary receivers appointed. Afterwards, George H. Smathers and L. P. McLoud were appointed permanent receivers, and they at once filed their bond and took possession of the assets of the bank.    The purpose of the action then was the collection of the assets of the bank by a receiver appointed by the Court, and the proper distribution of the assets amongst the creditors of the defendant bank.    Hundreds of claims have been proved by creditors of the bank, and so far as the record discloses there have been no exceptions filed to the admission of any of them as just claims against defendant bank.

There is nothing then *at issue* in the action, and the only matter, as we have said before, involved in the case is the reduction of the assets of the bank into money, and the distribution of the same by the receiver amongst the creditors according to law.    The allowances and charges therefor made

by the Court in favor of the receivers affect a substantial right of the plaintiffs in that it disposes of a part of the assets of the bank, and is a reduction to that extent of the amounts to which the creditors are entitled under their claims against it. The order of the Judge was a final one because it appropriated a part of the assets, affecting thereby a substantial right of the plaintiffs. The appeal does not have the effect either to delay or hinder the receiver from the discharge of his duties, nor can it delay the final settlement.

If the order of the Judge allowing the commissions could be regarded as interlocutory, under the practice exceptions would have been entered and the appeal brought up upon the final order distributing the assets. Therefore, in point of economy of time, if that were alone involved, no harm can come to anyone interested in the result of the suit, by regarding the order as final.

We are supported in this view by the decision in *Trustees v. Greenhou,* 105 U. S., 527. In that case the principal suit was commenced in the nature of a creditor's bill by the holder of bonds of the Florida Railroad Company against the trustees of the Internal Improvement Fund of Florida, and against the board itself as a corporation. The fund consisted of millions of acres of land belonging to the State of Florida, and was pledged for the payment of the interest accruing on the bonds and instalments of the sinking fund for meeting the principal, which were in arrear. The charge of the bill was that the trustees were wasting the fund, making fraudulent sales of the land, and refusing to provide for the payment of the bonds and interest. There was a prayer that the fraudulent conveyances be set aside, the trustees enjoined from selling any more land, and that a receiver be appointed to take charge of the fund. The management of the fund was taken out of the hands of the trustees, the

Court appointed agents to sell the land, and they made large
sales, realizing a considerable amount of money therefrom,
and dividends were made among the bondholders, most of
whom came in and took the benefit of the litigation. The lit-
igation, which was very expensive and vigorously conducted,
resulted in securing and saving a large amount of the trust
fund. The complainant, Vose, a creditor, bore the whole
burden of this litigation, and advanced most of the expenses
for conducting the action. While the proceedings were being
had Vose filed a petition setting forth his efforts and the
advances made by him, and prayed for an allowance out of
the fund for his expenses and services. A large amount was
allowed him by the Court, from which order the other cred-
itors appealed. The Court said: "The first question, how-
ever, is whether these orders do or do not amount to a final
decree upon which an appeal lies to this Court. They are
certainly a final determination of the particular matter aris-
ing upon the complainant's petition for allowances, and direct
the payment of money out of the fund in the hands of a
receiver. Though incidental to the cause, the inquiry was a
collateral one, having a distinct and independent character,
and received a final decision. The administration of the
fund for the benefit of the bondholders may continue in the
court for a long time to come, dividends being made from
time to time in payment of coupons still unsatisfied. The
case is a peculiar one it is true; but under all the circum-
stances we think that the proceedings may be regarded as so
far independent as to make the decision substantially a final
decree for the purposes of an appeal."

In *Williams v. Morgan,* 111 U. S., 684, where, in a suit
for the foreclosure of a mortgage made by the New Orleans,
Mobile and Chattanooga Railroad Company, upon its railroad
and franchises, in the order of sale compensation was fixed by

the Court as to what was to be paid to the trustees making the sale from the fund to be realized from the sale, it was held that such a decree was final as to that matter, and the Supreme Court had jurisdiction on appeal from the Circuit Court.

In *Hovey v. McDonald,* 109 U. S., 150, an appeal was allowed to be brought against a receiver from an order made in his favor.

The appeal then being properly before us, we will examine the matters complained of by the creditors, appellants. In the first order made by his Honor, Judge Norwood, in regard to the receivership, three temporary receivers were appointed, L. P. McLoud, John A. Nichols and George H. Smathers. In his order appointing permanent receivers, Nichols was left out, and Smathers and McLoud retained. The necessity of the appointment of more than one receiver, we can not see; and while we do not intend to criticise harshly the action of the Judges who made these appointments, it may be well for us to call attention to the almost universal habit throughout the whole country to make use of receiverships as ordinary remedies, to appoint more than one receiver, and to allow them for their services, not a proper compensation for their services, but large and excessive commissions and charges; and that unless the Judges, who have these appointments and allowances to make, exercise cautious scrutiny and diligent care, great injustice to creditors must result.

It does seem to us, speaking generally, that these matters of receivership are not conducted with such a view to economy and dispatch of the business in hand as characterizes the conduct of prudent business men in their ordinary business transactions.

In the main report of the receiver, the receipts were stated to be $118,367.71, and the disbursements $116,076.73. That

report embraced many entries which could not be called
receipts and disbursements, upon which commissions could be
allowed.    Most of those entries were concerning transactions
which were connected with the settlement of the affairs of
the bank, and which were proper to be considered by his
Honor in estimating the value of the work and labor per-
formed by the receiver; but they were not alone such receipts
and disbursements as are in contemplation of the statute,
Code, sec. 379 (4).    And this view seems to have been
adopted by the receiver in his amended report, wherein the
receipts are stated to be $34,205.49, and the disbursements
$31,914.51.

His Honor allowed to McLoud for his services as joint
receiver with Smathers, for five months and twenty days
service from the 13th of October, 1897, to the 2nd of April,
1898, $850.    McLoud put in a bill for $200 a month.    He
was the former cashier of the defendant bank while it was
a going concern, and his salary then was $150 per month.

The amount applied for by Smathers as receiver for ten
and a half months, was $1,825.    His Honor allowed him
$1,500.    The amount allowed to both receivers then was
$2,350, and much business connected with the settlement of
the defendant's affairs remained to be done before a final
order in the cause could be hoped for.

The receiver was also allowed quite a thousand dollars for
legal advice and services rendered to him by other attorneys
at law, and $1,066.13 for the wages of a clerk and stenogra-
pher.    Rankin was the clerk, and he had been for a number
of years in the employment of the defendant bank, first as
bookkeeper, and for the last two years of the bank's existence,
as its teller.    It appears he was a most competent man for the
work.

But the receivers contend that, as the amount of commis-

sions allowed to them did not exceed 5 per cent on the amount received and disbursed by them, this Court has no supervisory power over the allowance, and that the action of the Court below rests in the discretion of that Court, and is not reviewable by this Court. We are not of that opinion. The Code, sec. 1524, concerning the compensation to be allowed to executors and administrators, is in almost the identical language as sec. 379 (4), concerning the commissions allowed to receivers. In the first-mentioned section commissions are allowed "not exceeding 5 per cent on the amount of receipts and expenditures," and under section 379 (4) commissions are to be allowed "not exceeding 5 per cent on the amount received and disbursed by them." Section 29 of Chapter 46 of the Revised Statutes provides that Clerks of the Courts of Pleas and Quarter Sessions should make allowance of commissions to executors and administrators "not exceeding 5 per centum for the amount of receipts and expenditures."

In *Sheppard v. Parker,* 35 N. C., 103 (the Revised Statutes being in force), it was contended by the administrator, Parker, that, while this Court could review the decision of the Superior Court on the question of his commissions, if those commissions had been allowed through a mistake and contrary to law, it could go no further than to correct such error. The argument there was that "this Court has jurisdiction when commissions are allowed upon a wrong principle, but not where it is suggested that the commissions are excessive; for the *amount* of commissions is a matter of *discretion,* restrained by statute to 5 per cent, and this Court has no right to review the exercise of this discretion." The Court said, " We admit the distinction, but do not concede to it the effect contended for, except to this extent: when the objection is put on the ground of inadequacy or of excess, this Court is not disposed to interpose unless the amount is

clearly inadequate or clearly excessive, for the reason that it most usually happens a more minute investigation of the entire subject of the account takes place in the court below than it becomes necessary to give it in this Court, and it is therefore proper to presume that the rate adopted in the court below is correct." And the Court in the same opinion, as a reason for its decision, said: "But it is asked upon what principle can this Court review a matter of discretion which has been acted on in the court below? The distinction is this: when the exercise of discretion is in reference to a matter arising collaterally, and which does not present itself as a *question in the cause*, the decision of the court below is conclusive, as in cases of amendment; but when the discretion is used in reference to a *question in the cause,* the decision is · subject to review, for, although in one sense it is a matter of discretion, still being a question in the cause, the appeal which brings up the whole case necessarily brings it up." This Court then can review the matter of commissions allowed an executor or administrator when they have been given on a wrong principle, or when the allowance appears to be clearly inadequate or excessive.

Upon a review of all the facts in this case, including the report of the referee, when we consider the amount allowed to the receivers for the wages of a clerk and stenographer, the amount allowed him for the aid and counsel and advice of attorneys at law, we are of the opinion that the amount allowed to the receivers is clearly excessive. We can not see from the report of Receiver Smathers that the Receiver McLoud rendered any service whatever. We think, all things considered, that $150 per month, for the ten and a half months specified in the receiver's report, the time for which compensation was asked, would be sufficient to be allowed as commissions to the receiver, and the matter must

be remanded to the court below that that amount may be apportioned between the two receivers, Smathers and McLoud, according to the services rendered by each.

The counsel for the plaintiffs contended in this Court that the receivers were not entitled to any commissions whatever until the closing up of the business in their hands and the final order for the distribution of the fund. We have no precedents in this State on the subject, but we find it stated in Beech on Receivers, section 758, " That, as a general rule, the receiver may be paid, at stated intervals during the continuance of his functions, and so need not wait until the termination of the receivership." The same rule we find in substance in High on Receivers, section 789, and we are disposed to adopt that as the rule here.

The counsel of the plaintiffs also contended that the statute (Code, secs. 379-4) fixing the compensation of receivers "not to exceed 5 per cent" on the amount received and disbursed should be construed to mean that full commissions are allowable only for the performance of the two acts of receiving and disbursing, one-half for doing either act, and Beech on Receivers, section 766, was cited as authority for the position. The citation bears him out in his contention.

We have no decision on this point as to *receivers,* but we have decisions on this point in reference to the commissions of executors and administrators; and the language, as we have seen, as to the allowance of commissions to executors and administrators and to receivers being identical, the same principle would apply to both.

It has been held by this Court that commissions can be allowed to executors and administrators on both receipts and disbursements, to the extent of 5 per cent on receipts and 5 per cent on disbursements. In *Peyton v. Smith,* 22 N. C., 349, the Court said: "It is so difficult for this Court to ascer-

tain, by any means in its power, what is the reasonable rate
of commissions called for in any case by the nature of the
services, labor and responsibility of the trustee, that it is
much disposed, in general, to rely in this respect on the
judgment of the master. In this case, however, the Court
perceives a safer guide for the exercise of its discretion, and
will follow that guide. It appears that on one occasion when
the accounts of the executor were audited in the County
Court of Warren, and when the auditors recommended that
there should be allowed to the executor a commission of 5
per cent on his receipts and 5 per cent on his disbursements,
the court, nevertheless, ordered that his commissions should
be limited to 4 per cent on each. The Court therefore over-
rules the allowance of 5 per cent as made by the master, and
sanctions the rate established by the County Court." The
same manner of allowing commissions to administrators is
laid down in *Potter v. Stone,* 9 N. C., 30. There are no
later decisions of the Court on that point, but allowances to
executors and administrators are, we believe, universally in
this State allowed upon both receipts and disbursements, as
separate acts.

There was error in that part of his Honor's order allowing
commissions to the amount of $2,350, because they were
clearly excessive. The commissions will be adjusted accord-
ing to this opinion, and the costs of this appeal will be taxed
against the funds in the hands of the receiver.

Error.