Central Republic Bank and Trust Company, Complainant-Appellant, and Lott Hotels, Inc., Defendant-Appellant, v. Joseph F. Connery, Receiver, Appellee.

**Gen. No. 36,506.**

Opinion filed February 7, 1934. Rehearing denied February 26, 1934.

POPPENHUSEN, JOHNSTON, THOMPSON & COLE and HARRIS F. WILLIAMS, for appellants; EDWARD R. JOHNSTON, of counsel.

MICHAEL F. RYAN, for appellee; H. J. ROSENBERG, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from an order and decree of the circuit court of Cook county by which an allowance of fees was made to a receiver of certain properties for his own services, together with fees for his solicitor. The appointment of this receiver was made in a series of foreclosure proceedings instituted against various hotel properties, both real and personal, owned by Lott Hotels, Incorporated. Four foreclosure suits are involved, and in the trial court the four cases were heard together as one cause, and by order of this court, they have been consolidated for this hearing. The records in the four cases are identical. The order appealed from covers all four cases.

The services of the receiver and his solicitor are for a period beginning August 21, 1931, and ending August 31, 1932, or for a year and 10 days. During this period the receiver had already filed two current reports and accounts, and prior to the entry of the order appealed from, he had been allowed and paid the sum of $18,000 for his own fees, and $6,000 for his solicitor. The account and report involved here is the third presented by this receiver in and by which he asks for an additional allowance of fees for himself as receiver in the sum of $27,000, and an additional allowance for his solicitor of $8,500, which sums, if allowed and paid, would make a total for the receiver and his solicitor, of $59,500, for the period mentioned. It is insisted by the Central Republic Bank and Trust Company, the complainant in the various foreclosure proceedings, that the previous allowance of $18,000 for the receiver and $6,000 for the solicitor, are sufficient compensation for the period mentioned, to wit: one year and 10 days.

By the order appealed from, after a hearing, the court on November 12, 1932, made an additional allow-

ance for the receiver in the sum of $18,000, and for his solicitor the sum of $6,000, which makes a total allowance for the receiver and his solicitor for the year and 10 days, $48,000, $36,000 for the receiver and $12,000 for his solicitor.

The order appealed from was entered on November 22, 1932, and recites among other things that Joseph F. Connery was appointed receiver for three hotel properties on August 21, 1931; that the receiver filed his current report and account covering the period from August 21, 1931, to and including January 31, 1932; that the same was approved by the court on April 13, 1932, and on that date the court allowed the receiver the sum of $12,000 on account of his services from August 21, 1931, to and including January 31, 1932, and in addition, the receiver was directed to pay his solicitor the sum of $6,000 to apply on account of legal services for the period mentioned; that said receiver filed his second current report and account covering the period from February 1, 1932, to and including April 30, 1932; that the same was approved by order of the court on July 1, 1932, and an order was entered allowing the receiver the sum of $6,000 to apply on account of the receiver's fees during the period covered by his second report and account, and that no allowance be made on account of the solicitor's fees for the said period; that the third current report and account of receiver covers the period from May 1, 1932, to and including August 31, 1932. This last mentioned period is the one in dispute. The order further recites that the total cash receipts from operations of the three hotels by the receiver for the period beginning August 21, 1931, and ending August 31, 1932, were $890,174.82, and that the operating expense, exclusive of taxes, receivership expenses, and insurance premiums during the said period was $782,741.45. The order also recites that during the period beginning February 1, 1932, to and including April 30, 1932, the

receiver made large conservations in cash outlays, due to a downward revision of wage scales, decrease in merchandise costs, reductions in the cost of printing, insurance premiums, pay rolls and other expenses, and has effected conservation and savings in operations in the amount of approximately $200,000 that will inure to the benefit of the receivership. The order also recites the alleged facts as to the service of the solicitor for the receiver.

Prior to the appointment of the present receiver, and since April, 1928, there have been five receivers of these properties, and these five receivers, in addition to the fees of the present receiver, have been paid $192,500. This includes compensation for receiver's solicitor, he being the same solicitor who represents the present receiver.

The policy of these receivers, or some of them, seems best illustrated by what is said in the Gospel of St. Matthew, 25th Chapter, 29th Verse: "For unto everyone that hath, shall be given, and he shall have abundance; but from him that hath not, shall be taken away even that which he hath."

In this receiver's first current report and account he reports that he made a complete and exhaustive survey of the financial operating aspects of these hotels, including an examination of the books of account; that he made a survey of trade conditions of the hotel industry in Chicago and in the neighborhood and district of the properties in question; that he consulted with various hotel operators in Chicago, all with a view of determining a safe, progressive and economical policy with reference to management; that as a result thereof the receiver decided upon a policy of conservation in the operation of the properties and the avoidance of experiments in regard to management and operation which might disturb labor conditions throughout the property, or create unrest and uncertainty among the patrons; that when the receiver took

over the properties, there was a managing director at a salary of $12,000 a year, and that he remained in charge for several months; that the receiver, in the interest of economy, dispensed with the services of the managing director; that the receiver made drastic cuts in pay roll expenses and other items of expense, including coal, and by the strictest economy, has brought the expense of operation to a minimum; that while the receipts were 120,000 odd dollars less as compared with the corresponding months of the previous year, the operating expense, repairs, maintenance, etc., were 85,000 odd dollars less; that the receiver made drastic cuts in wages, and in the number of help employed, and took advantage of discounts that had heretofore not been taken advantage of; that he made an investigation with reference to reduction of fire insurance; that when he took charge of the hotels the average occupancy of all three hotels was 53.30 per cent; that during the period covered by his first current report and account, the average occupancy was 57.83 per cent; that he made a campaign to secure new business from the World's Fair held in 1933, necessitating some promotional work by the receiver; that the receiver continuously and personally supervised the payment of all bills and all operations of the receiver, and held daily meetings with the managers of all three hotels, examined all vouchers and checked on vouchers drawn for payment of bills; that because of the drastic cuts in expense of operation, it has resulted in a great saving to the receivership; that he has dispensed with the necessity of applying to the court for the issuance of receivership certificates for the purpose of borrowing money during this unusual financial distress and depression; that the record of the business of all three hotels will compare more than favorably with that of any hotels of like character in the city.

In his second current report and account, it is asserted that the receiver has given personal supervi-

sion to the operation of the three hotels, and has diligently devoted his time and given his continuous attention to the operation of these hotels, has made cuts in pay roll expense, maintenance and operation, and has attempted by the strictest economy to bring the expense of the operation to a minimum.

In the third current report and account covering the period from August 21, 1931, to and including August 31, 1932, the period in question here, the receiver reported that he made conservations and savings in cash outlay, drastic cuts in merchandise costs, pay roll and other expenses, notwithstanding the fact that there had been a decrease in the revenue in the operation of the hotels. He reports a summary of cash receipts and expenditures from August 21, 1931, to and including August 31, 1932, as follows:

| | | |
|---|---|---|
| "Net cash turned over by previous receivers less prior receiver's obligations paid | | $ 32,630.58 |
| "Total cash receipts from operations | | 890,174.82 |
| | | $922,805.40 |
| "Disbursements— | | |
| "For operating purposes | $782,741.45 | |
| "For taxes, receivership expense and life insurance premiums | 62,809.77 | |
| | | $845,551.22 |
| "Cash balance, August 31, 1932 | | $ 77,254.18" |

He also reports that he made an efficiency survey at a nominal cost, and that he obtained valuable data and

information on this subject from surveys made by other large hotels in Chicago without expense to the receivership, and that owing to the downward revision in wage scales, decrease in merchandise, reduction in printing, insurance premiums, pay rolls and other expense, a saving will be made in September, 1932, of an average in excess of $30,000 per year. He also submits various tables showing savings in pay rolls. The legal services for this period, for which he asks additional allowance for his solicitor, are noted in this report as well as in the previous reports.

The statement was made and not disputed that the receiver had paid 60 per cent of the 1928 taxes, 40 per cent of the 1929 taxes and 25 per cent of the 1930 taxes, and that further payment of taxes had not been made because of lack of funds.

There is nothing in the record which suggests that either the receiver or his counsel have been anything but diligent and efficient in the work performed by them. However, it does appear, and it was stated to this court on oral argument, that there is employed by the receiver a hotel manager for each of the hotels in question, which, of course, relieves the receiver of the day to day detail of their operation.

In the matter of the receivership of *Insull Utility Investment, Inc.*, heard recently in the District Court of the United States for the Northern District of Illinois, there was no objection to fees, but the District Court, by Justice Evan A. Evans, made some observations with regard to receivers' and masters' fees, and in view of the character and standing of Justice Evans, we deem portions thereof worthy of citation and consideration. In this case, one Fentress was appointed receiver of the Insull Utility Investment Corporation in a suit filed in the District Court for the Northern District of Illinois against this company. After his appointment as receiver in the

main suit, he was appointed ancillary receiver in New York, and later appointed receiver in the bankruptcy proceedings instituted in the Northern District of Illinois against this same company. He asks for compensation in all three receivership matters. The Insull Utility Investment Corporation had assets of $1,500,000 with which to meet unsecured debenture obligations of $66,000,000, as well as other debts. In passing upon the question of the receiver's and master's fees, Judge Evans said, among other things:

"Approaching the receivership position as one of honor and trust, as an officer of the court and an arm of the judge who appoints him, he must recognize that a substantial part of his compensation must be found in the opportunity to serve. He has, in other words, joined the ranks of those who are public servants, whose compensation never has been and never will be as large as those engaged in private employment. His compensation must in some ways be compared to the salary of the judge who was sitting on the bench when the appointment was made. An inquiry into the compensation of the United States District Attorney and the Postmaster is appropriate. The salary of the Chief Justice of the United States Supreme Court may well be viewed as the maximum which should be allowed. These are not the sole tests, but it must be recognized that receivers in the Federal courts are in their nature public officers and their compensation must be determined in the light of such facts. Unless the courts can secure the services of such men and unless courts insist upon the selection of such receivers, the task of meeting a situation such as has confronted the courts from 1929 to the present time may well be surrendered to other bodies.

"Notwithstanding protracted, painstaking and for the most part excellent services rendered by the master and the large amounts involved in these causes,

after viewing the records and considering the circumstances disclosed, we cannot doubt that the allowances are much too large—certainly twice and three times what they should be. If the time devoted to the entire service—282 days—be accepted as equivalent to one year, the total allowance is fifteen times the salary of the trial judge and eight times that received by justices in this court. It may be compared to the compensation of the Mayor of New York City—$15,000, the salaries of the Governor and members of the Court of Appeals of New York—$10,000, and the $17,500 paid to judges of the Supreme Court in the City of New York. Although none of these can be taken as a rigid standard, they are to be considered when it becomes necessary to determine what shall be paid to an attorney called to assist the court. His duties are not more onerous or responsible than those often performed by judges.

"Another important factor in the compensation of the receiver is the time devoted to the work and the character of the work performed. Does such appointment exclude the appointee from carrying on other work? Is the appointee thus named, a receiver in other suits? Are the appointees engaged in business, and does the appointment terminate such participation? Another matter—Does the performance of the receivership call for special knowledge and special training? If so, does the receiver who is appointed qualify? A single illustration will suffice. A president of a railroad has reached his position after forty years of service. He has devoted his entire life and all his time to the transportation business. His road goes into receivership, and he is named receiver. He continues to devote his entire time, and his experience is as valuable as a receiver as it was as president of the railroad. Under such circumstances, the court must

of course consider the compensation which the appointee received as president of the railroad.

"And finally, in determining compensation, it must be kept in mind that 1933 is not 1929. The wages and salaries of all kinds were lower in 1932 than in the twenties. The difference must be reflected in the compensation of receivers and their counsel, as well as it is in the other fields.

"Mr. Fentress has presented his service charges in three statements. As receiver in equity, he charged and received $12,500. As receiver in ancillary proceedings, his bill is $7,500. As receiver in bankruptcy, he asks $10,000. In all three proceedings he served for a period of eleven months.

"Mr. Fentress devoted eleven months to all three services. He has received $12,500. He has not severed his connection with the business house of which he has been an officer. Considering what has been said, I am of the opinion that Mr. Fentress has received all the compensation the court should allow him. In other words, I fix the value of his services $12,500 in this case. This sum he has received. No further allowance will be made."

In the instant case, an examination of the record shows that the services of the solicitor were largely in connection with administrative details of the receiver.

We hold that there was not sufficient showing to justify the amount of fees allowed to the receiver, either for himself or for his solicitor.

It might not be inappropriate for the trial court in making its order for fees, in connection with other matters presented, to take into consideration the salaries fixed by statute for the circuit and superior court judges of Cook county, and other public officials. However, no fixed standard can be adopted, and the circumstances of each case must necessarily guide the court.

It is urged that the order appealed from is not a final order in so far as it directs the receiver to retain certain sums as and for receiver's fees and as fees for his solicitor, and a motion was made to dismiss the appeal for that reason, which motion has been reserved to the hearing. The portion of the order appealed from, which is of moment in this inquiry, is as follows:

"It is Further Ordered, Adjudged and Decreed that Joseph F. Connery, receiver in said four causes, be and he is hereby authorized to retain the further sum of $18,000, as receiver's fees, for services rendered by the said Joseph F. Connery, as receiver of the Belden-Stratford, Webster and Parkway Hotels, in the above entitled causes, from August 21, 1931, to August 31, 1932.

"It is Further Ordered, Adjudged and Decreed that the said Connery, receiver in said causes, be and he hereby is further authorized to pay Michael F. Ryan, solicitor for said receiver, for services rendered by said Michael F. Ryan to the said Joseph F. Connery, receiver aforesaid, for the period from August 21, 1931, to and including August 31, 1932, the further sum of $6,000."

In *People v. Illinois State Bank,* 312 Ill. 613, the question presented for decision was whether or not in an action brought to dissolve a bank and to collect and distribute its assets, an order which directs distribution of a substantial portion of those assets to the receiver or his solicitors and thereby diminishes the assets distributable to the credit of the bank, is final and appealable. In commenting upon this question, the Supreme Court said:

"While this court has not decided the precise question presented, it has repeatedly held that a final decree is not necessarily the last order in a case, and that any order which finally fixes the rights of the parties is final and appealable. (*Sebree v. Sebree,* 293

Ill. 228; *DeGrasse v. Gossard Co.,* 236 id. 73; *Allison v. Drake,* 145 id. 500.) . . . *Where an order fixes the amount of a receiver's compensation or the amount due him for expenses and directs such amounts to be paid out of the fund in the receiver's hands, an appeal lies from such an order upon behalf of any person interested in the fund.* (*Grant v. Superior Court,* 106 Cal. 324, 39 Pac. 604; *State v. District Court,* 28 Mont. 227, 72 Pac. 613; *Ogden City v. Bear Lake and River Waterworks and Irrigation Co.,* 18 Utah, 279, 55 Pac. 385; *Tompson v. Huron Lumber Co.,* 5 Wash. 527, 32 Pac. 536; *Battery Park Bank v. Western Carolina Bank,* 126 N. C. 531, 36 S. E. 39; *Capital City Tobacco Co. v. Anderson,* 138 Ga. 667, 75 S. E. 1040.) The order from which this appeal was prosecuted is not an order which merely fixes the amount of the fee due the solicitors for the receiver, but it is an order which directs the receiver to pay the amount out of the fund in the receiver's hands. It appropriates a part of the assets of the bank and thereby directly affects the interests of the creditors and the stockholders.''

In that case, the Supreme Court in addition to the cases cited above also cites the case of *Ruggles v. Patton,* 143 Fed. 312, where the Federal Court of Appeals said:

''The test of the finality of a decree affecting either the conduct or the compensation of a receiver is not found in the mere fact as to whether the receivership was thereafter continued, but in the nature and character of the order itself. When Mr. Patton was ordered to pay to himself out of the funds in his hands as custodian for the court the sum of $20,000 for his services for 1904, that sum of money was just as absolutely withdrawn from the custody of the court as if he had been ordered to pay it to a third person. The fact that he was then the court's receiver, and that he continued to be the court's receiver, gave the

court no more authority to call back a fund which he was directed to pay to himself, in the absence of a reservation to that effect, than it could exercise over any other party obtaining funds through an order of the court.''

In the instant case, the court very definitely orders the receiver to retain the sums mentioned as receiver's fees, and to pay certain amounts as fees for his solicitor, which, in our opinion, is a finality in so far as these items are concerned, and we hold that the appeal was properly taken from such order. The motion to dismiss the appeal is denied.

The order of this court is that the order appealed from is reversed and remanded with the direction that the court enter such order as is consistent with the views herein expressed.

*Reversed and remanded with directions.*

WILSON and HEBEL, JJ., concur.