GRAHAM v. CARR.

(Filed November 24, 1903.)

RECEIVERS — *Commissions—Fees—Attorney and Client—The Coae, sec. 379, subsec. 4—Acts 1901, ch. 2, sec. 88.*

> The allowance of commissions and counsel fees to a receiver by the superior court is *prima facie* correct, and the supreme court will alter the same only when they are clearly inadequate or excessive.

ACTION by P. C. Graham, receiver, against J. S. Carr and J. S. Manning, heard by Judge *W. R. Allen* at March Term, 1903, of the Superior Court of DURHAM County. From a judgment for the plaintiffs the defendants appealed.

*Boone, Bryant & Biggs, W. P. Bynum, Jr.,* and *J. W. Graham,* for the plaintiffs.

*Guthrie & Guthrie* and *Manning & Foushee,* for the defendants.

MONTGOMERY, J. Whether or not an allowance made by the Court below to the plaintiff, a receiver of an insolvent corporation, for his commissions and also for the amount allowed him to pay his counsel employed by him in the execution of his trust was suitable and proper is the matter presented to us by the appeal for consideration. Notwithstanding the allowance has been made by the Court below, it is conceded by the plaintiff that the adjudication was only

*prima facie* and that this Court has the power to review the action of the Court below and to set aside the same if allowed on a false principle, or if the amount is clearly inadequate or excessive to alter or modify the same. *Bank v. Bank,* 126 N. C., 531.

In the provisions of section 379, subsection 4, of The Code, receivers of corporations that have been dissolved, or become insolvent, or have forfeited their corporate rights, are given an allowance in the nature of commissions to be fixed by the Judge appointing them, not exceeding five per cent. on the amount received and disbursed by them. That statute being silent on the question of whether or not the receiver might be allowed any further compensation in the way of attorney's fees or other necessary help in the execution of his trust, it seems to have been deemed by the General Assembly necessary to enact a remedial statute upon the subject, and at its session of 1901, in chapter 2, section 88, it was enacted: "Before distribution of the assets of an insolvent corporation among the creditors or stockholders the Court shall allow a reasonable compensation to the receiver for his services, not to exceed five per cent. on receipts and disbursements, and the costs and expenses of administration of his trust, and the costs of the proceedings in said Court to be first paid out of said assets." It is not insisted by the defendant that the allowance made to the receiver in this case for commissions and attorney's fees were allowed on a false principle, and the only matter on that subject before us, therefore, is whether the amounts allowed are clearly excessive.

In considering the matter we shall keep in mind the declaration made by the Court in *Stewart v. Boulware,* 133 U. S., 78, that, "like all questions of costs in courts of equity, allowances of this kind are largely discretionary, and the action of the Court below is treated as presumptively correct, since it

has far better means of knowing what is just and reasonable than an appellate court can have."

Before arriving at our conclusion that the allowance to the receiver for both his commissions and the amount allowed him for attorney's fees is excessive, we gave a most careful consideration to each and every part of the record, and it may not be amiss to summarize the main features of the case: In December, 1895, there was organized in the city of Durham a corporation under the name of the "Golden Belt Hosiery Company," the main stockholders being the defendants in this action and J. W. Smith, the largest creditor interested in this proceeding. Smith was the first president and was succeeded by Carr. The business of the corporation was a failure, financially, under both administrations, and in February, 1898, it was insolvent, the mill was shut down and negotiations commenced to sell out to another corporation in Durham called the Durham Hosiery *Mills*. Subsequently a sale was effected, and the Durham Hosiery Mills was to be reorganized under the name of the Durham Hosiery *Company*. The Golden Belt Hosiery Company received for its property, good-will, etc., $20,000 of first mortgage bonds of the Durham Hosiery Company and $19,000 par value of the stock. The defunct corporation, the Golden Belt Hosiery Company, had no other property besides the stock and bonds, which were the consideration for the sale to the new company, to pay a large outstanding indebtedness of over fifty thousand dollars. J. S. Manning was appointed a trustee and received the bonds and stock into his hands for the purpose of selling the same, that the proceeds might be applied to the payment of the debts of the old company. Manning, trustee, sold to the defendant Carr $14,000 of these bonds for their full face value, and the proceeds were applied to the payment of that amount of indebtedness of the Golden Belt Hosiery Company to the National Bank of Durham—Carr

and Smith both being securities for the payment of the debt. Afterwards Manning sold to the defendant Carr the remainder of the bonds, $6,000 worth, and the $19,000 of the stock of the new company. The sales were made for full value and in good faith, and the proceeds were applied to the admitted indebtedness of the Golden Belt Hosiery Company. The affairs of the new company, the Durham Hosiery Company, of which the defendant was a large stockholder and president, and in which Smith had no interest, greatly prospered from the start. In fact, the referee who was afterwards appointed in this case found as a fact that the capital stock was $40,000 and its bonded debt $40,000, and that a statement made by its book-keeper showed a profit in the year 1899 of between $23,000 and $25,000, and in the year 1900 a profit of between $21,000 and $22,000. The plaintiff was appointed receiver of the Golden Belt Hosiery Company, and on 4 January, 1900, commenced, through his attorneys, Boone, Bryant & Biggs, this action against J. S. Carr and J. S. Manning, trustee, to recover the $6,000 of bonds of the Durham Hosiery Company, the remainder after the sale of $14,000 worth to Carr, the defendant, and $19,000 of stock of the new company, on the ground that the sale was void for want of power in Manning, the trustee, to make it, and that the bonds and stock still belonged to the Golden Belt Hosiery Company. The plaintiff afterwards filed an amended complaint, in which he alleged that the defendant Carr had guaranteed the payment of a debt of the Golden Belt Hosiery Mills of about $6,000 to Mitchell & Co. and also a debt due to the Mayo Knitting Machine Company and one to the Farmers and Merchants Bank of New Bern—all guaranteed by Carr—and that he had unlawfully applied the proceeds of the sales of the $6,000 worth of bonds and $19,000 worth of stock to the payment of the Mitchell, Mayo Knitting Machine Company and Bank of New Bern debts, to the

GRAHAM *v*. CARR.

exoneration of himself and to the wrong of other creditors of the Golden Belt Hosiery Company. After the pleading were in, the case was referred to A. C. Zollicoffer "to hear the evidence and decide the matters in controversy in this action, and make report of his findings and conclusions of law separately, and report the evidence taken before him to this Court." After the evidence was all in, the referee allowed the plaintiff to amend his complaint so as to ask for the recovery of the possession of the $14,000 of bonds of the Durham Hosiery Company sold by Manning to the defendant Carr. The referee made his report, in which he held as a matter of law that the plaintiff was not entitled to recover the bonds and stock sold by Manning to Carr, or the value thereof, and upon exception to the report by the plaintiff the Court reversed the findings of law of the referee, except the *third*. The referee, as his third finding of law, had held that the plaintiff was not entitled to recover possession of the $14,000 worth of bonds first sold by Manning to Carr, and the Court confirmed that finding. The plaintiff did not appeal from that part of the judgment of the Court.

On appeal to this Court it was decided that the judgment below should be reversed, except that part of it which affirmed the third conclusion of law made by the referee. The case is reported in 130 N. C., 271. The sale of the bonds and stock of the Durham Hosiery Company was held to be valid. The Court decided, however, that although neither the stockholders nor the directors of the Golden Belt Hosiery Company had any right to complain, because the proceeds of the sale of the stock and bonds were applied to the debts of the concern, and the stockholders being entitled to no part of the same until the debts of the defunct corporation should be paid, yet that the creditors of the defunct corporation, whether stockholders or not, had rights with regard to the payment of the debts which stockholders do not have. And the Court further

added: "As they (the creditors) have no lien on the assets of the corporation for the payment of their debts, and no right to have their debts preferred to those of other creditors, nor to object to the payment of other creditors in preference to the payment of their debts, if they are just debts, if such payments are made in good faith and without fraud, unless the debts so paid are due to a stockholder or officer of the corporation. When this is the case the law will not allow the stockholders and officers of the corporation to take advantage of their knowledge of the insolvent condition of the concern and their power to use and control the assets to pay their own debts, or to relieve them from special liabilities to the injury of other creditors." The Court further said there: "But as he, Carr, was *specially* and personally liable for the Mitchell debt and for the New Bern Bank debt, the law will not allow him to retain the advantage he got in having the Mitchell debt paid out of the proceeds arising from the sale of the $6,000 mortgage bonds, nor the advantage he got by having the application of a sufficient amount of the proceeds of the sale of the stock applied to pay the New Bern Bank debt to discharge it. While these sales were valid and the title to the bonds and stock passed to him, the plaintiff, who represents the creditors, should have judgment for the amount of the New Bern Bank debt and the amount of the Mitchell debt, and the defendant Carr will become a creditor to these amounts of the Golden Belt Hosiery Company, or any other debt that may be due to him. And this will not prevent him from claiming contribution against any co-surety on any residue that may remain unpaid."

When that decision was certified down to the Superior Court of Durham County the counsel of the defendant entered a motion in writing demanding that the form of the judgment should be in the nature of a set-off as to Carr's ascertained debt against the insolvent corporation; that the defendant

should not be charged with the receiver's commissions or with counsel fees either as an allowance or as a part of the costs, and that no execution be issued against Carr upon any judgment that might be entered against him, until it should be determined by the Court what deduction Carr was entitled to have made from the said judgment by virtue of his being a creditor of the Golden Belt Hosiery Company. A judgment was rendered by the Court "that the plaintiff receiver do recover of the defendant Carr the sum of $13,395.31, with interest on $10,612.93 from September 29, 1902, until paid, together with the costs of this action other than receiver's commissions and expenses and costs of referees and other charges, which are to be determined upon by charging it up to the receiver and refunding the party upon the settling of the receivership. It is further ordered that defendant Carr, on proof of any claim or claims he may hold against the Golden Belt Hosiery Company, shall share *pro rata* in the assets of the said company as other creditors who may have claims, in accordance with the discretion and opinion of the Supreme Court in that respect. It is further ordered that no execution issue on the judgment herein until the costs and the *pro rata* share to which each creditor is entitled shall be ascertained either by agreement or by referring it to the party to elect, and upon the *pro rata* of each being determined the judgment herein shall be credited with the *pro rata* of the assets due the defendant Carr, and thereupon execution may issue against said defendant."

At the next term of the Court a report was made by the receiver, which contained the amount claimed by him as commissions and the amount which he thought proper to be allowed for the attorneys employed in the case, and those amounts were allowed by the Court.

It is to be seen from the facts stated in this opinion that the most serious part of the litigation grew out of the alleged

invalidity of the sale of the bonds and stock of the Durham Hosiery Company, sold by Manning, trustee, to Carr, the defendant, as the property of the Golden Belt Hosiery Company. That was the prime cause of action, as appeared in their original complaint, and the plaintiff's demand for judgment was for the possession of the stock and bonds. The allegations in the amended complaint, in reference to the unlawful application of the proceeds of the sale of the $6,000 worth of bonds and $19,000 worth of stock to the Mitchell and New Bern Bank debts, seem to be an after-thought, and it was not until after the referee had heard the whole evidence that the plaintiff asked leave to amend his complaint so as to ask for the recovery of the possession of the $14,000 worth of bonds first sold to the defendant by Manning. Of course it cannot but be seen that the motion for that amendment was made after the referee had found that the profits of the Durham Hosiery Company had amounted to more than $23,000 a year upon a capital stock of $40,000, and of course it may be reasonably inferred that when the original complaint was filed it was not deemed necessary on the part of the plaintiff's counsel to demand the recovery of the $14,000 worth of bonds, as that amount went to pay a debt of the Golden Belt Hosiery Company to the Durham National Bank, for which debt both Carr and Smith were securities.

We see no evidence in the record that the defendant Carr has unnecessarily prolonged this litigation, or that he has done anything in the matter that a prudent business man would not have done for the protection of his property, if we may except from this statement the payment of the Mitchell and New Bern Bank debts out of the proceeds of the sale of the stock and bonds. The error which has been made in the allowance of commissions and expenses is due to a misunderstanding of the real import of the decision in this case by this Court at its February Term, 1902. In that decision

the validity of the sale of the bonds and stock by Manning to the defendant was upheld. The sale was fair and open and the price full, and the only thing required of the defendant was that he should account for the proceeds of the sale of the $6,000 worth of bonds and the $19,000 worth of stock, not as a clear recovery by the plaintiff of that amount of money to be paid to *other* creditors, but that it might be distributed to all of the creditors *pro rata,* of which creditors the defendant was greatly the largest. The direction to the receiver was that the debts due to all the creditors should be ascertained and the proceeds distributed *pro rata* among them, and that the indebtedness of the defunct corporation to the defendant should be credited on this judgment against him. That decision, understood in this way, was in effect a ruling that the true amount of recovery against the defendant Carr would be the difference between the judgment rendered against him, *i. e.,* $13,395.31, and the amount of his ascertained debt against the company. At the term at which the allowances were made (March Term, 1903) the debts due to the three creditors were as follows: To the Durham Dyeing Company, $1,592.40; to J. W. Smith, $4,403.58; and to the defendant Carr, $31,168.72. The *pro rata* part of the defendant Carr of the amount he was required to pay by the judgment was $11,728.79. He would then owe to the receiver, March 16, 1903, $2,101.11. That amount, plus $156.08 in the receiver's hands from another source, under an equitable view of the whole of this litigation, is the recovery upon which must be based the allowance of commissions to the plaintiff.

Upon a review of the whole matter we think the receiver is entitled to receive $225.71 as his commissions, the full amount allowed by the statute, and to receive for the use of the attorneys employed by him the sum of $950, as follows: $750 to be paid by him to Boone, Bryant & Biggs, and $100 each to John W. Graham and W. P. Bynum, Jr.; and these amounts

to be paid out of the *pro rata* shares of each of the creditors.

The judgment of his Honor *Judge McNeill* followed the decision of this Court.

The judgment of his Honor *Judge Allen* as to the allowances to the receiver as commissions and for counsel fees is as herein set forth—one-half the costs to be taxed against each part.

Modified and affirmed.

CLARK, C. J., and WALKER, J., did not sit on the hearing of this case.