The facts are sufficiently stated in the opinion of the Court by MR. CHIEF JUSTICE CLARK.
J. B. Lanier of Salisbury died intestate in 1894, and the plaintiff was appointed administrator. In September, 1904, the plaintiff filed his petition for a final account and settlement, and the heirs at law and distributees filed an answer to the petition. The matter was referred to a referee, to whose report both parties filed exceptions. The judge overruled all exceptions, to which action both sides filed exceptions and appealed.
PLAINTIFF'S APPEAL.
The plaintiff abandons all exceptions in his appeal except:
1. The disallowance of $250 attorney's fees to Watson Buxton. The referee found as a matter of fact that it was unnecessary for the plaintiff to consult them in behalf of the estate, and this finding of fact has been approved by the judge. The ruling of law thereon, that this fee should not be allowed to the administrator, must be approved. *Page 430 
2. The referee reports that the clerk's allowance of commissions to the administrator of 5 per cent amounted approximately to $10,000; that the expenditures for clerical services, attorneys' fees, and expenses amount to over $8,000, making a total of about $18,000, or over 16 per cent of the total receipts, the total collections being about $110,000; that the largest part of the estate was settled in two years, but the entire administration lasted about nine years. The referee going over (547) the record of the administration in full, found that 4 per cent upon the receipts and 2 1/2 per cent upon the disbursements would be a fair compensation to the administrator for his services. Five per cent is the limit allowed by law, but within that limit the compensation should be proportioned according to the services rendered and in consideration of all the facts and circumstances. The ex parte allowance of commissions by the clerk is not conclusive, Walton v. Avery, 22 N.C. 404, and in Green v. Barbee, 84 N.C. 72, the Court said: "The compensation allowed the personal representative for his services within the limit of 5 per cent on both sides rests in the sound discretion of the tribunal called to pass upon the question." The judge below, in reviewing the entire dealings and acts touching the administration of the estate, concurred in the allowance made by the referee, and we see no reason to disturb it.
3. The other exception is that the referee held that the administrator should not be allowed more than $1,000 for his attorney's fees in representing him in this present matter. The defendants except to the allowance of any attorneys' fees at all to the administrator for defending himself in this action, and the whole matter will be considered on the defendant's appeal.
In the plaintiff's appeal the judgment should be
Affirmed.
DEFENDANTS' APPEAL.
Passing by the exceptions to the findings of fact, as to all which there was evidence and the rulings upon which by the judge are conclusive upon us, the first exception to be considered is to the allowance of $30,000 paid upon the Rountree notes which the defendants contended were given for losses on "futures" in the New York market and which was therefore a gambling debt and invalid under Revisal, 1691. The referee found as a fact: "The record does not disclose sufficient evidence either to show affirmatively that this was a gambling contract or that it was a legitimate debt made with the intention that the cotton should be delivered, and the referee finds that the administrator had no such knowledge of the nature of the transaction which resulted in the Rountree debts, nor could have procured the same upon reasonable *Page 431 
inquiry, as would have enabled him successfully to resist suits (548) brought thereon, on the ground that they were incurred under gambling contracts." We cannot agree with the defendants that because in their answer in this proceeding they alleged that these were gambling debts, this cast the burden of proof upon the plaintiff under Revisal, 1691. That provision applies where a party sues upon the contract and the debtor denies it and sets up the defense. But here the defendants are alleging that the payment by the plaintiff of his intestate's notes, valid on their face, is invalid because the contract was founded upon illegal consideration, and the burden was upon them to prove it.
The matter has been very fully and ably argued by counsel on both sides. But in view of the findings of fact by the referee, that it is not shown that this debt was for a gambling contract, and the approval of that finding by the court, we cannot sustain the exception.
Nor can we sustain the exception that the referee paid out insurance premiums to keep up a policy which was held as collateral to a note due by Payne, who was a man in advanced years and in somewhat feeble health. It is true that this turned out a loss to the estate. But it is found that the administrator acted in good faith, and it cannot be held that a reasonably prudent man would have acted differently under the circumstances. It has been forcibly said by some one that "Our hindsights are better than our foresights."
Nor do the facts in evidence justify the contention of the defendants, that the administrator should forfeit all commissions. The referee has not found evidence of negligence and unlawful mismanagement to justify it.
The findings of fact in regard to the management and sale of the distillery interest and liquor belonging to the estate preclude our sustaining the exceptions of law in regard to the administrator's action in that respect.
While, ordinarily, administrators should not be allowed for clerk hire and the expenses of a bookkeeper, this being usually a part of the ordinary services for which he receives a commission, in this case the evidence discloses that it was necessary to employ such clerical assistance, and the allowance thereof was doubtless considered by the (549) court below in fixing the commissions below the limit allowed by law.
The defendants also except because at the time of the death of Lanier there was in the bank the sum of nearly $5,000, and the defendants insist that commissions should not be allowed on this item, or at least not as high as 4 per cent. But doubtless this item was considered with others in fixing the amount of the commissions allowed the administrator. *Page 432 
The administrator was allowed attorneys' fees in the course of the administration of the estate, i. e., prior to the present suit, to the amount of $2,651.39, of which approximately $1,000 was paid to his resident counsel. The defendants except to this allowance, especially the latter, because the plaintiff was himself an excellent lawyer, which was doubtless one cause of his selection as administrator. While allowances for counsel fees should be carefully scrutinized, the court below and the referee have found that these amounts were not excessive, and in reviewing the history of the management of this estate and the amount of litigation we cannot overrule the conclusion of the judge below.
The defendants further except because the plaintiff has been allowed $1,000 counsel fees in this litigation. His final report disclosed that after handling the estate at a cost of $18,000, out of which $10,000 went to him as commissions, $2,631 to lawyers for fees in regard to the litigation of the estate, and between $5,000 and $6,000 for clerk hire and incidental expenses, the plaintiff held in his hands for the heirs and distributees only $685.34 out of an estate whose total assets amounted to $110,000. To this report the defendants excepted, and by the judgment of the court below the balance due them has been increased to $5,346.33. This litigation has been not in the interest of the estate nor a mere formal proceeding to close it up, but in truth and in fact it has been a contest between the heirs at law on the one side and the administrator whom they sought to make individually liable on the other. The result shows that while the administrator has not been fixed with large sums which the defendants allege he should be made liable for, the contest has been to protect himself individually from such liability, and the services of the attorneys were for his personal benefit in that (550) regard. Besides, it has been adjudged that he is indebted to the estate nearly $6,000 more than he returned in his report as due the heirs at law and the distributees. The counsel fees for opposing the recovery of such judgment should be charged against the administrator personally, as is the judgment itself.
In Stonestreet v. Frost, 123 N.C. 644, it is said: "We think that the administrator should not have been allowed the $100 fee which he paid the attorney out of the assets of the estate, for the reason that the service was rendered by the attorney for the attempted prevention of the recovery against the administrator by the distributees of that which belonged to them." In Allen v. Royster, 107 N.C. 383, it is also said: "An administrator should not be allowed credit for fees paid counsel in defense of an action to compel him to a final account with the next to kin." The true rule is that the fiduciary "is entitled to be credited for a reasonable sum paid to an accountant or attorney for stating the *Page 433 
account. We think, too, if there is any difficulty in doing it, he is entitled to the advice of counsel and to credit for any reasonable fee paid for that purpose. But for any payment beyond this it must be an exceptional case to entitle him to credit." Whitford v. Foy, 65 N.C. 276.
For the above reasons we also think that the cost of this litigation below should be divided between the parties. The final result is recovery by the defendants of about $6,000 in excess of the amount which the administrator admitted to be due them in his final account. But for the fact that they sought to charge him with further sums in which they are not successful, the entire cost of the litigation should have fallen upon the plaintiff. Notwithstanding its form, this is really an action by the defendants to charge the plaintiff individually with sums which he had received for the estate and in which action the defendants have recovered judgment against him. The account should also be reformed to charge the administrator with interest, from the date of filing the report, on so much of the amount which is now adjudged to have been due by him at that date, on which interest is not calculated in the judgment below.
The defendants in the judgment below, in accordance with Rule 22 of this Court, objected at the time of making up the case to the sending up of the stenographer's notes in form of question and answer instead of in narrative form, as we have often stated should be (551) done. Cressler v. Asheville, 138 N.C. 482. These notes, however, were sent up on demand of the plaintiff, together with other unnecessary parts of the record. The defendants contend that such unnecessary additions amount to 175 printed pages. Upon a careful estimate we think that at least 125 printed pages of the matter sent up over the objection of the defendants, and upon the demand of the plaintiff, were unnecessary and the cost of copying and printing the same should be taxed against the plaintiff. Land Co. v. Jennett, 128 N.C. 4. This is in addition to the allowance of 60 pages to be taxed in favor of the defendant under Rule 22.
In defendant's appeal there is
Error.
Cited: S. c., 159 N.C. 437; Randolph v. Heath, 171 N.C. 387. *Page 434