W. L. PARSONS, Jr., ᴇᴛ ᴀʟ. v. MRS. MARY L. LEAK, Wɪᴅᴏᴡ ᴏғ T. C. LEAK, Dᴇᴄᴇᴀsᴇᴅ, ᴇᴛ ᴀʟ.

(Filed 25 January, 1933.)

**1. Dower A b—Widow is entitled to actual allotment of dower in unencumbered land and to dower's value in encumbered land.**

The deceased left an estate consisting of lands and interest in a number of various businesses and named trustees in his will to carry on the businesses for a period after his death, clothing them with full power to do so. The wife dissented from the will and claimed dower. Some of the lands were unencumbered but some had been mortgaged by the deceased in his lifetime and some by the trustees in carrying out the provisions of the will, the widow having joined in all the instruments: *Held,* the widow was entitled to actual allotment of dower in the unencumbered lands and to the money value of her dower in the encumbered lands, payable out of the proceeds of the sale of the remaining assets of the estate under the order of court, after deducting commissions due the trustees, reasonable attorney's fees and charges of administration.

**2. Executors and Administrators G b—Executors and administrators are entitled to lawful commissions and expenses out of estate's assets.**

The commissions allowed executors and administrators are in reasonable payment for services rendered by them in the performance of their duties, and in proper instances include reasonable costs, charges and attorneys' fees necessary to the performance of their duties, and under the provisions of the statute, C. S., 157, such sums may be retained by them out of the assets of the estate against the rights of creditors and all persons claiming an interest in the estate.

**3. Executors and Administrators D d—Charges of administration and executor's commissions have priority over claim for value of dower.**

The widow's dower right in the lands of her deceased husband is an interest in his estate, and his executors are entitled to payment of commissions due them, together with reasonable attorney's fees, cost and charges of administration before the payment to the widow of the money value of her dower right in lands sold under mortgages executed by her husband and his executors in which she joined.

ADAMS, J., took no part in the decision of this case.

CIVIL ACTION, before *Finley, J.,* at December Term, 1931, of RICH-MOND. The cause was committed to a referee, and only such facts found by him as may be necessary to develop the questions of law involved will be summarized.

T. C. Leak died on 4 December, 1923, domiciled in Richmond County, leaving a last will and testament which was duly probated. Item 2 of the will is as follows: "I am interested in various enterprises and businesses in Richmond County, N. C., my largest interests being farming, sawmilling and cotton-milling. I do not think it would be wise for my interests in these businesses (and possibly my other businesses) to be wound up immediately after my death, and, as I now view my business affairs, I am confident that my interests should be placed in the hands of trustees with power to carry on my present business affairs four or five years after my death, possibly longer. I have been especially impressed with the business acumen of my two nephews, Wm. C. Leak and Walter L. Parsons, Jr., and their devotion to their duties. Likewise, I have absolute confidence in the business ability and integrity and devotion to my interests of my lifelong friend, J. LeGrand Everett, and it is my will and desire and accordingly I do hereby give, devise and bequeath my entire estate, real, personal, and mixed to Wm. C. Leak, Walter L. Parsons, Jr., and J. LeGrand Everett as trustees and I hereby empower them to handle my estate in as full a manner and with all power that I now have in my lifetime." Other provisions of the will required the trustees to pay to the widow "one-third of all profits accruing to my estate from all sources so long as she may live," etc. Certain provisions were made for the two children of the testator, to wit, T. C.

Leak, Jr., and Hal L. Leak. Item 6 of the will is as follows: "Having full confidence in the trustees named herein I desire that no bond be required of them in the fulfillment of their duties as trustees of my estate and I enjoin on them to consult freely and employ any of my present employees in the continuation of my present businesses. However, I want my trustees to make annual reports of their dealings with my estate to the clerk of the court as now required of guardians and to receive jointly an annual compensation of five per cent of the amount handled by them." In Item 4 of the will Leak, Parsons and Everett were appointed guardians of the children of the deceased, and in Item 7 they were appointed executors of the will. Leak, Parsons and Everett qualified as trustees and executors in December, 1923, and took charge of the estate of the testator. Thereafter the widow, Mary L. Leak, duly dissented from the last will and testament of her husband.

At the time of his death the deceased owned more than seven thousand acres of land and various lots, improved and unimproved, together with his residence. He also owned a half interest in an opera house, warehouse, and in certain lands known as the Leak-Porter land. The testator also owned stocks in banks, realty companies, building and loan associations, cotton mills, mule companies, ice company, etc., together with a certain amount of cash, notes and mortgages, life insurance and various accounts receivable. There were also on hand 1,139 bales of cotton, farming implements, gin outfit, etc.

At the time of his death the deceased was indebted in the amount of $534,755.59. Portions of this indebtedness were secured and other portions unsecured. After taking possession and custody of the assets of the estate the trustees, executors and guardians entered upon the administration of the same and undertook to carry on the various enterprises and business activities of the testator. During the course of such administration the executors and trustees received from all sources approximately $1,700,000, and disbursed approximately the same amount. So that at the time of commencement of this action they found it impossible to continue the operation of said business enterprises.

In order to carry on the business enterprises aforesaid it became necessary to borrow money in large amounts, and hence the executors and trustees borrowed money and executed and delivered mortgages and deeds of trust upon certain lands owned by the deceased in which mortgages and deeds of trust the widow joined. Certain other lands were sold by the executors and trustees, and the widow joined in such conveyances. When it became apparent that the business enterprises could no longer be carried on, and that large losses had been sustained, this suit was instituted by the executors, trustees and guardians against the widow and creditors of the estate.

Throughout the course of administration the executors and trustees have filed with the clerk of the Superior Court of Richmond County annually their annual accounts and statements of their expenses and of their receipts and disbursements, "which said reports have been and remain on file in the office of said clerk, and that no person interested in the estate of said T. C. Leak, deceased, has ever filed or made any exceptions to the same, which is admitted." It was found by the referee that the widow had been paid $12,432.23, and the further sum of $24,723.63 for the support and maintenance of the minor children, and that the executors and trustees had retained the sum of $27,400 as part payment of commissions earned in the administration of the estate. The executors and trustees claimed a balance due of $26,600 on commission account and $5,500 as reasonable attorney's fees for legal services necessary and incident to the due administration of the estate.

Upon exceptions filed to the referee's report a hearing was had before the judge upon the report of the referee. The trial judge decreed in part that the widow was entitled to dower "in the lands owned by T. C. Leak at the time of his death and remaining unsold and unencumbered actually allotted and laid off to her by jurors to be named by appropriate decree of the court in this action." The identification of such parcels of property is set out in the judgment, but the same is not deemed pertinent to the question of law involved. The judge found that the widow is entitled to have her dower "allotted in the manner stated above in each tract of land owned by T. C. Leak at the time of his death, and which has heretofore been conveyed by way of mortgage or deed of trust to secure indebtedness, either by the said T. C. Leak and wife prior to his death or by the said executors and trustees and said widow since his death, which has not heretofore been sold by foreclosure sale. In the case of any tract subject to a mortgage or deed of trust which has already been sold, if there remained a surplus from said sale after the payment of costs and expenses of sale and the payment of debts secured by such mortgage or deed of trust, such surplus, when paid into court, shall be held subject to the payment to said widow of her claim against said estate representing the value of her dower rights in said tract of land," etc. The dower right of the widow was further preserved in all lands which had been sold and conveyed by deed executed by the widow and the executors and trustees. The trial judge further decreed "that a sale of all the property and assets of the estate of T. C. Leak, deceased, not heretofore sold, subject to the limitations hereinafter set out, be made under the direction of this court and by a commissioner appointed to make sale thereof, and the net proceeds arising therefrom shall be applied as hereinafter set out.    .   .   .    It is further ordered

and decreed that all the proceeds arising from the sale of all unpledged personal assets belonging to said estate and the surplus remaining after payment of the debts secured by pledged personal assets and the proceeds of the sale of all real estate of said deceased, including any surplus remaining after the payment of the debt secured by each mortgage or deed of trust on real estate of said estate from the funds arising from the sale of such mortgaged tract of land shall be paid to the executors and trustees, plaintiffs, who shall retain out of the first of such funds coming into their hands sufficient funds to pay and discharge therefrom the following items, which are hereby found to be necessary costs, expenses, charges, and disbursements in the administration and settlement of said estate, under the terms of the said will of T. C. Leak, deceased, to wit: Mrs. L. G. Fox, balance on salary, $100; J. N. Hasty, balance on salary, $657.01; balance inheritance taxes, $714.89; balance of commissions due executors and trustees, $26,000 (this item to include $5,500 attorney's fees which shall be paid by said executors and trustees), costs of the action including actual and necessary costs, expenses, charges and disbursements in the final administration of the estate. It was further ordered that when the lands had been sold as provided in the judgment that the executors and trustees should first retain "from funds in hand a sufficient sum to pay and have paid the costs, expenses, charges and disbursements as herein decreed and herein found necessary in the administration and settlement of said estate, and the said executors and trustees shall then pay to the said widow from funds then remaining in their hands, if any, so far as the same will extend, such claims for dower and which said claims is hereby decreed to have priority in payment over any and all unsecured claims and debts owing by said estate."

From the foregoing judgment Mary L. Leak, widow, appealed.

*F. W. Bynum and Varser, Lawrence & McIntyre for plaintiffs.*
*J. C. Sedberry for Mary L. Leak.*

BROGDEN, J. In settling an insolvent estate, is the widow's claim for the money value of her dower entitled to priority of payment over commissions due the executors and trustees, together with reasonable attorney's fees, costs and charges incident to the proper administration of the estate?

The testator at the time of his death was interested in many business enterprises and owned various types of property. Some of his real estate was encumbered, and large holdings, including his residence, were not encumbered. In his will he declared his desire that his business undertakings be carried on for a substantial period of time. This undertaking required the borrowing of money from time to time and the

giving of security for such sums so borrowed. For such purpose, the widow joined the executors and trustees in the execution of deeds, mortgages and deeds of trust upon certain land. Obviously, under our decisions, she was entitled to dower in this property. The foreclosure of such mortgages and deeds of trust precluded the actual allotment of dower in the physical property, and consequently in accordance with the principles announced in *Chemical Co. v. Walston,* 187 N. C., 817, 123 S. E., 196, and *Blower Co. v. MacKenzie,* 197 N. C., 152, 147 S. E., 829, the money value of her dower must be paid out of funds realized from the sale of the remaining assets specified in the report of the referee and the final judgment of the court. Our statutes and decisions relating to dower have justly made liberal provision for widows and stand as an unfailing guarantee, that even in an insolvent estate, the widow and her dower right shall not be submerged and swept away in the swift-running tide of losses, misfortunes or bad judgment of the deceased husband. The decree provided that dower should be actually allotted and set apart in accordance with law in all the unencumbered land of deceased, and further provided for a sale of the remaining assets as set forth in the judgment. The chief controversy arises upon that portion of the judgment which authorizes the executors and trustees to pay out of the fund created by the sale, the balance of commissions due them, attorney's fees and charges of administration before applying any part of the proceeds to the widow's claim for dower.

Administrators and executors are not allowed commissions merely by virtue of the office or appointment as such. Such commissions are allowed for services rendered in administering, liquidating and settling the estate. *Grant v. Pride,* 16 N. C., 269. It has been the policy of the law to permit and allow reasonable commissions to executors and administrators together with reasonable attorney's fees and such other assistance as might be reasonably necessary to proper and efficient administration. Thus, in *Overman v. Lanier,* 157 N. C., 544, 73 S. E., 192, this Court said: "While, ordinarily, administrators should not be allowed for clerk hire and the expenses of a bookkeeper, this being usually a part of the ordinary services for which he receives a commission, in this case the evidence discloses that it was necessary to employ such clerical assistance, and the allowance thereof was doubtless considered by the court below in fixing the commissions below the limit allowed by law." Again, in *Shepard v. Bryan,* 195 N. C., 822, 143 S. E., 835, it was held that commissions and attorney's fees, if reasonable and duly allowed by the court, constituted proper charges against the estate. See *Thigpen v. Trust Co.,* 203 N. C., 291. C. S., 157, provides that executors and administrators "shall be entitled to a commission not exceeding five per

cent upon the amount of receipts and disbursements which shall appear to be fairly made in the course of administration, and such allowance may be retained out of the assets against creditors and all other persons claiming any interest in the estate. . . . Nothing in this section shall prevent any executor, administrator or collector from obtaining a reasonable sum for necessary charges and disbursements in the management of the estate." Thus the statute empowers such personal representatives to retain commissions "out of the assets against creditors and all other persons claiming an interest in the estate." Manifestly, a claim of dower is an "interest" in the estate. Hence the wording of the statute lends direct support to the judgment. Moreover, the claim of the widow must be paid out of a fund produced by the sale of assets. This sale of assets and the creation of the fund thereby is accomplished through the processes and powers of administration. Certainly it would appear to be just that a person claiming an interest in a fund should be required to take such benefits subject to the reasonable costs and expenses of creating the very fund which liquidates the claim. It does not impair or diminish the dower right of the widow to require her to pay the freight on her own cargo. This idea was expressed in *Trust Co. v. Stone,* 176 N. C., 270, 97 S. E., 8, in which the Court declared: "We are, therefore, of the opinion the widow is entitled to dower in the proceeds of sale and, by the same reasoning, in the land unsold. She must, however, be content with the ascertainment of its value as to the land sold out of net proceeds, because, having consented to the sale and conversion, she is justly chargeable with the ratable part of the expense."

Affirmed.

ADAMS, J., took no part in the decision of this case.

---

W. L. PARSONS, JR., ET AL. v. MRS. MARY L. LEAK, WIDOW, ET AL.

(Filed 25 January, 1933.)

1. Estoppel B a—Parties held estopped from setting up priorities contrary to provisions of order allowing them to intervene.

Where parties are permitted by a referee to intervene in a pending cause involving the question of priorities of claim of dower and other claims against the estate of a decedent, and the order of the referee allowing them to intervene specifies that the claims of the interveners shall be heard without affecting the right of priority of the original parties whose claims had already been heard by him: *Held,* the interveners are bound by the limitations in the order and may not claim priority over the original parties to the action.