DAISY RHEM PATRICK v. BRANCH BANKING AND TRUST COMPANY, GUARDIAN OF HOSEA COLLINS RHEM, DISABLED VETERAN.

(Filed 29 November, 1939.)

1. **Insane Persons § 9b—In proper instances, clerk, with approval of judge, may order guardian to purchase home for use of dependent sister of incompetent and to make proper advances for her support.**

   The evidence tended to show that petitioner is the sister of a World War veteran, that prior to the time he was drafted he gave her what assistance he could for her support, and that he sent her money after he was in the army, that he is unmarried and has no other dependents, that he became incurably insane and was placed in a Government hospital where he is being taken care of without charge, that his guardian has on hand $22,046.81, representing payments on his War Risk Insurance, and that petitioner is destitute and without means of support. *Held:* The clerk of the Superior Court, with the approval of the resident or presiding judge, has the power, upon proper findings from the evidence, to order the guardian to purchase a home in the name of the incompetent for the use of petitioner, and to advance petitioner a reasonable sum monthly for her support, since petitioner comes within the terms of C. S., 2296, and since advancements authorized by the statute may be made partly in cash and partly in providing a home free of rent. Whether petitioner is a "dependent" within the meaning of the Veterans' Guardianship Act, ch. 33, Public Laws of 1929, as amended by ch. 262, Public Laws of 1933, Michie's Code, 2202 (13) (14), held not necessary to be decided.

2. **Same: Attorney and Client § 10—Attorney's fees are not part of costs.**

   Attorneys' fees are not part of the costs and may not be recovered by the successful litigant, and while the courts in the exercise of their chancery or statutory powers may allow the recovery of attorneys' fees for professional services rendered in the protection of trust funds, there is no statutory or equitable authority for allowance of attorneys' fees out of the estate of an incompetent for services rendered in successful prosecution or establishment of a claim against the estate of the incompetent.

APPEAL by defendant from *Frizzelle, J.,* at 14 April, 1939, Term, of LENOIR. Modified and affirmed.

The following judgment was rendered in the court below:

"This cause was heard before the undersigned clerk of the Superior Court of Lenoir County on April 1, 1939, as will appear by the transcript of evidence filed herein, and upon the conclusion of the evidence the court reserved its rulings and findings until the matter could be argued by counsel for petitioner and respondent, and thereupon it was agreed that this cause be argued by counsel on April 14, 1939. Accordingly, on April 14, 1939, while the Superior Court was in session with Honorable J. Paul Frizzelle, Judge presiding, it was agreed that J. Paul Frizzelle, Judge riding the Sixth Judicial District, should sit with the

undersigned clerk and hear a review of the evidence and the arguments of counsel, and at said hearing Judge Frizzelle did sit with the undersigned clerk and hear a review of the evidence and arguments by counsel.

"Thereupon the court makes the following findings of fact:

"1. That Hosea Collins Rhem is a non-sane veteran of the World War and has been mentally incompetent and confined in a veterans' hospital suffering from a probably incurable insanity since 1918, and that said veteran will probably remain so non-sane and so confined during the remainder of his life.

"2. That said non-sane veteran, Hosea Collins Rhem, is of full age, unmarried and without issue, and that the guardian, Branch Banking & Trust Company, is possessed for him of an estate and income which is more than sufficient to provide for him, he being confined in a veterans' hospital without expense to said guardian.

"3. That Hosea Collins Rhem was drafted into the United States Army in the spring, 1918, and at the time of his enlistment or entrance into the United States Army, or within a short period thereafter, was required and did take out War Risk Insurance as evidenced by Certificate No. 1816040, the original of which certificate is filed in this record.

"4. That Hosea Collins Rhem designated as beneficiary in said policy of War Risk Insurance the petitioner, Daisy Rhem Patrick, his sister.

"5. That at the time said Hosea Collins Rhem was drafted into the United States Army and for some time prior thereto, Daisy Rhem Patrick was dependent upon him for support and looked to and received from him moneys, wearing apparel and other necessaries.

"6. That Daisy Rhem Patrick is the only surviving sister of Hosea Collins Rhem.

"7. That Hosea Collins Rhem recognized a responsibility and obligation to provide support for the petitioner, Daisy Rhem Patrick.

"8. That Daisy Rhem Patrick is married and has four children, the oldest child, a son, being married, and the other three infant children, one son and two daughters, reside with petitioner.

"9. That Hosea Collins Rhem has living one sister, Daisy Rhem Patrick, the petitioner, of Lenoir County, North Carolina; one brother, Alonza Rhem, of New York City, and one niece, Jessie May Fisher, of Lenoir County, North Carolina.

"10. That the Branch Banking & Trust Company is the only qualified and acting guardian of Hosea Collins Rhem.

"11. That there has accumulated in the Guardian Account of Hosea Collins Rhem from the payments upon the policy of War Risk Insurance the sum of $22,046.81, and that Daisy Rhem Patrick, the petitioner, has never received any benefits whatsoever or any amount of money whatsoever from said Guardian Account.

"12. That the petitioner, Daisy Rhem Patrick, is a pauper and in need of a home and maintenance.

*"Conclusions of Law:* Upon the foregoing findings of fact the court is of the opinion and concludes as a matter of law that Daisy Rhem Patrick is and has been dependent on Hosea Collins Rhem within the meaning of sections 2202 (13), 2202 (14), 2295 (a), and 2296, of the North Carolina Code of 1935.

"Upon suggestion of the court, Daisy Rhem Patrick, through her counsel, has suggested the purchase of the following described piece or parcel of land situate in the city of Kinston, North Carolina, for the use and occupancy of the petitioner, Daisy Rhem Patrick, as a home for herself during her lifetime, or during the time said Hosea Collins Rhem remains insane, the title to be taken in the name of Hosea Collins Rhem at the purchase price of $1,250.00. And the court, after hearing the evidence upon the value of said premises, finds as a fact upon said evidence that $1,250.00 is a reasonable and fair price for said property, said property being described as follows: Situate in the city of Kinston, Lenoir County, North Carolina, in what is known as 'Lincoln City' and described as follows: Beginning at the southwest corner of Ed Jackson's lot on the north side of Reed Street and runs north about 140 feet to a ditch; thence west 50 feet; thence south 140 feet to Reed Street; thence east with line of Reed Street 50 feet to the beginning. Being the same lot conveyed by Ed Whitfield to Marzella Whitfield for life and after her death to T. Roosevelt Whitfield, Vida Whitfield (now Vida Jordan) and Rudolph Whitfield, by deed of record in Book 65, page 413, and being the lot conveyed to Ed Whitfield by J. A. McDaniel and wife, by deed of record in Book 31, page 720.

"The petitioner having prayed for a monthly allowance for her maintenance, the court further finds as a fact that $20.00 per month is a fair and reasonable allowance for said petitioner.

"It is thereupon in the discretion of the court ordered, adjudged and decreed—That Branch Banking & Trust Company, guardian, be and it is hereby authorized and directed to purchase in the name of Hosea Collins Rhem the real estate herein described for the use and occupancy of Daisy Rhem Patrick, the petitioner, free of rent and taxes during her lifetime, or during the time said Hosea Collins Rhem remains insane.

"It is further ordered, adjudged and decreed that the Branch Banking & Trust Company, guardian, pay over to said Daisy Rhem Patrick for maintenance and support during her lifetime, or during the time said Hosea Collins Rhem remains insane, the sum of $20.00 per month, beginning April 1, 1939, from money belonging to Hosea Collins Rhem, the said sum of $20.00 per month to be charged as an advancement against any interest of said Daisy Rhem Patrick in the estate of Hosea Collins Rhem.

"It further appearing to the court that Messrs. Allen & Allen, attorneys, have rendered to the petitioner, Daisy Rhem Patrick, valuable legal services in establishing her relationship to Hosea Collins Rhem and her right to benefits as a dependent of Hosea Collins Rhem, the court finds that said services are reasonably worth $625.00.

"It is thereupon further ordered and adjudged that Branch Banking & Trust Company, guardian, pay to Messrs. Allen & Allen the sum of $625.00 for legal services rendered to petitioner, to said attorneys' fee to be charged as an expense against the general fund of Hosea Collins Rhem in the hands of said guardian, and shall represent a disbursement from his estate. Dated at Kinston, North Carolina, this the 25th day of April, 1939. John S. Davis, Clerk of Superior Court.

"The undersigned Judge of the Superior Court, riding the Sixth Judicial District, sat with the clerk of the Superior Court of Lenoir County upon the final hearing of this cause and heard a review of the evidence and the argument of counsel. The proceeding, together with the findings of fact, conclusions of law, orders and judgment, are hereby approved. This the 25th day of April, 1939. J. Paul Frizzelle, Judge Presiding."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Allen & Allen for plaintiff.*
*John G. Dawson for defendant.*

CLARKSON, J. The questions involved: (1) Whether or not the clerk of the Superior Court, with the approval of the judge, resident or presiding, has the power to direct and order a guardian to purchase a home in the name of the ward and for the sole use of a dependent of said ward, under the provisions of section 2202 (13), of the North Carolina Code of 1935 (Michie). We think so. (2) Whether or not the clerk of the Superior Court, with the approval of the judge, has the power to order a guardian to make fit and proper advancements out of the surplus of the ward's estate or income to a dependent sister, under the provisions of sections 2296 and 2202 (14), of the North Carolina Code of 1935, *supra.* We think so. (3) Whether or not the clerk of the Superior Court, with the approval of the judge, has the power to order a guardian to pay the attorney fees of the petitioner, plaintiff. We think not.

The General Assembly of North Carolina, Public Laws 1929, ch. 33, passed the "Veterans' Guardianship Act." This was amended by ch. 262, Public Laws 1933. The amendment material to this controversy reads as follows: Section 1 (c). ". . . Provided, said guardian may purchase with said funds a home or farm for the sole use of said ward or

*his dependents* upon petition and order of the clerk of Superior Court, said order to be approved by the resident or presiding judge of the Superior Court, and provided further that copy of said petition shall be forwarded to said Bureau before consideration thereof by said court." N. C. Code, *supra,* sec. 2202 (13).

N. C. Code, *supra,* sec. 2296, is as follows: "When any non-sane person, of full age, and not having made a valid will, has children or grandchildren (such grandchildren being the issue of a deceased child), and is possessed of an estate, real or personal, whose annual income is more than sufficient abundantly and amply to support himself, and to support, maintain and educate the members of his family, with all the necessaries and suitable comforts of life, it is lawful for the clerk of the Superior Court for the county in which such person has his residence to order from time to time, and so often as may be judged expedient, that fit and proper advancements be made, out of the surplus of such income, to any such child, or grandchild, not being a member of his family and entitled to be supported, educated and maintained out of the estate of such person. Whenever any non-sane person of full age, not being married and not having issue, be possessed, or his guardian be possessed for him, of any estate, real or personal, or of an income which is more than amply sufficient to provide for such person, it shall be lawful for the clerk of the Superior Court for the county in which such person resided prior to insanity to order from time to time, and so often as he may deem expedient, that fit and proper advancements be made, out of the surplus of such estate or income, to his or her parents, brothers and *sisters,* or grandparents to whose support, prior to his insanity, he contributed in whole or in part."

Section 2297 provides that such advancements shall be ordered only "for the better promotion in life of such as are of age or married," etc.

The acts of the General Assembly are clear and explicit, and are sufficient to grant the relief prayed for by petitioner, the plaintiff. In fact, the act is the logic of the situation and righteous.

In the present proceeding it is admitted that the defendant, guardian of the insane or incurable veteran of the World War, has in its possession in the bank, as guardian, $22,046.81, a sum which, together with the income, is more than amply sufficient to provide adequately for all the needs of the ward. Under these circumstances, it is immaterial—and we need not decide—whether the sister is a dependent within the meaning of that term as used in the Veterans' Guardianship Act.

It is clear that the petitioner comes within the terms of C. S., 2296. The advancements there provided for may be made in cash or by providing a home free of rent. Here the clerk ordered, and the judge approved, advancements partly in cash and partly by providing a home.

Where the estate is sufficiently large to justify it, it makes no matter whether the sister is advanced cash with which to rent a home or is permitted to use a house purchased by and belonging to the estate.

The evidence offered is amply sufficient to support the conclusion of the clerk that the petitioner is entitled to aid from the estate of the ward of the respondent.

The plaintiff petitioner offered in evidence envelope addressed to Daisy Rhem, R. 3, Grifton, N. C., dated Washington, D. C., 31 July, 1918, 10 p.m. On the left-hand corner of said envelope appears the following: "Treasury Department, Bureau of War Risk Insurance, Division of Military and Naval Insurance, Life Insurance Section, Official Business, Return after 5 days unopened." On the right-hand corner of said envelope appears the following figures, "1816040," and also certificate, dated 9 April, 1918, for $10,000 War Risk Insurance, in favor of Hosea Collins Rhem. She testified, in part: "After my brother went in the Army, I received through the mails moneys. . . . I have seen my brother since the war. He was in the hospital for the insane at Goldsboro. . . . I do not have any property, and my husband does not have any, and I do not have any money. My husband is not living at home with me. He has been living away from me for some time at intervals. I have four children, two boys and two girls. One of the boys is twenty, and the other is sixteen years old. The oldest boy is married. One of my girls is eighteen, and the other fifteen years old, and one of them is in bad health."

Henry Duggin testified, in part: "I knew Hosea Collins Rhem well, as we were schoolmates. . . . I went to the war and I knew Daisy Rhem Patrick, sister of Hosea Collins Rhem. I saw them both often just before the war. I know that Hosea contributed to the support of his sister, Daisy Rhem Patrick. I used to go over there right much because he and I were going to school together, and I knew him well, and I know that he did all he could for her and gave her money at times and bought things for her. That is, he bought clothes. She was living with her uncle and Hosea helped her all he could. They both worked there for John Bryant. I know that Daisy looked to her brother, Hosea, for help, and I know that she called upon him for help. I quite often talked with him about his sister and did so just before he went into the Army."

Cora Lowick Dunn testified, in part: "Hosea and Daisy lived with Bryant and worked. After they grew up, they lived with their uncle and Hosea helped his sister like he could. He helped her with work. . . . When Hosea worked, he divided his money with Daisy, that is, what he could. He didn't get much, but what he got, he divided with his sister the best he could."

The petitioner offered in evidence letter from the United States Veterans Bureau at Washington, D. C., acknowledging receipt of copy of petition in this proceeding and signed by H. L. McCoy, Director of Insurance, dated 2 March, 1939. The petitioner offered in evidence carbon copy of letter to State Service Officer, U. S. Veterans Administration, Charlotte, N. C., dated 18 February, 1939, signed by Allen & Allen, attorneys, and which reads as follows: "We beg to enclose herewith copy of petition filed in the Superior Court of Lenoir County. This copy is being sent in pursuance of chapter 40 (a) of North Carolina Revised Code of 1935. We shall ask that the petition be heard on March 3, 1939."

The defendant excepted and assigned error to the allowance of attorney fees for plaintiff-petitioner. This is the only error revealed by the assignments of error. In neither brief filed herein are any authorities cited approving the allowance of attorney fees in circumstances similar to the present case. As well stated in *Parker v. Realty Co.,* 195 N. C., 644 (646): "The general rule is stated in *Ragan v. Ragan,* 186 N. C., 461, 'Attorneys' fees are not recoverable by successful litigants in this State, as such are not regarded as a part of the court costs.'" Again, in *In re Will of Howell,* 204 N. C., 437, citing numerous authorities, "Accordingly, it may be stated as the general rule in this jurisdiction that counsel fees, as such, are not allowed as a part of the costs in civil actions or special proceedings." There are recognized exceptions to this rule where courts, in the exercise of chancery or statutory powers, are aiding certain fiduciaries in the management of estates or trusts (see *In re Will of Howell,* 204 N. C., 437 [438]; and the cases there cited), as, for example, the allowance of fees to an administrator's attorney (*Overman v. Lanier,* 157 N. C., 544), to the attorney for the next friend of an infant (*In re Stone,* 176 N. C., 336), to the attorney for the receiver of an insolvent corporation (*Graham v. Carr,* 133 N. C., 449; *Hood, Comr. of Banks, v. Cheshire,* 211 N. C., 103), these, and the other cases examined, permitted the allowance of attorneys' fees for services rendered in the protection of the trust funds; we have found no cases in this jurisdiction in the absence of statutes permitting fees to attorneys who were successful in adverse proceedings directed against the trust estate. That there is a distinction between services rendered in the protection of a trust estate and those rendered by attorneys successfully establishing claims against such estates is made clear by two cases in our Reports. In *Wells v. Odum,* 207 N. C., 226, *it is held* that attorneys' fees for the successful propounders of a will are allowable out of the assets of the estate, whereas, in *In re Will of Howell,* 204 N. C., 437, *it was held* that attorneys' fees for caveators of a will may not be ordered paid out of the assets of the estate (now *contra* by statute, see *In re Will*

*of Slade,* 214 N. C., 361). In the *Howell case, supra,* in discussing the lack of precedent for ordering payment of caveators' attorneys' fees out of the funds of the estate, this Court said: "Nor is the authority supported in tendency by our decisions. They point in the other direction." This quoted statement is equally true of the present case. As the instant case is a statutory proceeding, in the absence of statutory authority for taxing the fees of attorneys successfully proceeding against the fund in the costs of the proceeding, we hold the general rule to be determinative, *i.e.,* such fees may not be allowed from the assets of the estate.

In accordance with the above opinion, the judgment below is

Modified and affirmed.